[No. 4826.]

The Colorado Midland Railway Company v. Brady.

1. **Custom**—A railroad company is not relieved of its duty to furnish a reasonably safe place for the performance of the servant's duty, by a usage of other like companies in constructing like ways and works in the particular manner adopted, unless the court can declare, as matter of law, that the ways and appliances used are reasonably safe.—(206, 210)

2. **Negligence—A Question for the Jury**—Where the measure of the duty is ordinary and reasonable care, the question is for the jury.—(206)

So, if, though the facts are not disputed, different minds might honestly reach different conclusions, e. g., where a railroad company fails to plank an elevated trestle upon which trains are made up, and cars coupled and uncoupled, it appearing that this might have been done at slight expense and without in any manner interfering with the operation of the road.—(207, 210)

3. **Master and Servant — Safe Place —** A railroad company maintains an elevated trestle where trains are made up, and cars coupled and uncoupled, only partially floored, where the employees must walk to perform their duty, and where to provide a floor would in no manner interfere with the operation of the road, and would involve slight expense. The question whether, to leave the trestle in this condition is negligence, must be left to the jury.—(207)

4. **Master and Servant—Assumption of Risk—Question for Jury**—Part of an elevated trestle in defendant's yards was planked, and a part not so. Plaintiff was injured by falling

through the trestle at the point where the plank floor terminated, while moving before a car, attempting to couple it. He had worked in the yard for a considerable time, and upon the planked portion of the trestle frequently. Held, that, though the plaintiff knew that a part of the trestle was unplanked, it was not to be declared, as a matter of law, that he had assumed the risk of injury from the condition of the trestle.—(209)

5. **Master and Servant—Servant's Contributory Negligence** —Where, in the discharge of his duty, the servant is confronted with a sudden emergency requiring instant action, error of judgment on the servant's part will not, as a matter of law, be imputed to him as negligence.—(211)

*Appeal from El Paso District Court*—Hon. F. T. Johnson, Judge.

Messrs. Rogers, Cuthbert & Ellis, for appellant.

Mr. T. J. O'Donnell, Mr. John M. Harnan, Mr. Dan B. Carey, for appellee.

Chief Justice Steele delivered the opinion of the court.

The plaintiff, while engaged in the service of the defendant as a switchman, on the 18th day of July, 1899, received an injury which necessitated the amputation of his right leg below the knee. The testimony shows that, at the time plaintiff was injured, he was engaged in attempting to couple two cars loaded with coal on the coal trestle of the defendant in its yards at Colorado City; that the trestle is elevated about ten feet above the ground; that that portion of the trestle track in front of the coal bins is planked; the remaining portion, about two-thirds of the length, is unplanked; that one of the cars which plaintiff was attempting to couple was attached to a train consisting of a switch engine and several cars of coal which were at the time being backed upon the trestle; that plaintiff failed in his first attempt to

make the coupling, owing to a difference in the height of the draw-bars; that while engaged in attempting to make the coupling, the train of cars was moving slowly along, and plaintiff walked along the trestle in front of the foremost car, and that, while so walking and attempting to make the coupling, he stepped into a space between the planking and the first tie beyond, and fell; that his right leg was caught in the space and that the cars, which were still moving, ran over his leg and crushed it. Other facts material to the decision will be stated in the course of the opinion.

The plaintiff claims that the defendant was negligent in not having the trestle track planked throughout its entire length. The defendant denies that it was negligent in not having the trestle so planked, and insists that the plaintiff assumed the risk of receiving an injury such as he sustained, because he knew, or by the exercise of ordinary care should have known, that the trestle was unplanked; and also that in the performance of his duty as switchman or brakeman he was guilty of negligence contributing to his injury. The jury returned a verdict in favor of the plaintiff in the sum of seven thousand dollars, and the defendant has appealed.

The court erred, it is said, in submitting the case to the jury, because it was not shown that the defendant was guilty of negligence; because the plaintiff had assumed the risk of an injury such as he received; because the plaintiff was guilty of negligence contributing to his injury. Although error is predicated upon certain rulings of the court and the refusal of the court to give certain instructions, and the giving of certain instructions, counsel mainly rely upon the propositions that the defendant was not negligent, and that the plaintiff assumed the risk.

The witnesses for the defendant testified that the track was planked in front of the coal bins, not for the purpose of affording protection to the employees, but for the purpose of preventing coal from falling to the ground, and that a walk on the south side and outside the track was provided for the employees. It was shown that the coal-bin trestles on many of the railroads, principally in the West, were planked as the one on which plaintiff was engaged was planked. And because no higher degree of care was exercised by other roads than was exercised by the defendant, and because the trestle here was built in accordance with the general custom and usage, and is up to the ordinary and usual standard, defendant insists that, by submitting the case to the jury, the jury was permitted to invent a scheme of trestle of its own and determine the relative merits of the invention and of those trestles in general use and generally approved by railroad men. But a railroad company is not relieved of its obligation to furnish a reasonably safe place by showing what other railroads have furnished, and the fact that open trestles are used on other railroads constitutes no defense to an action of this kind, if, as a fact, the court cannot declare as a matter of law that the place furnished is reasonably safe. The question is not determined by showing that other railroads have been maintained in the same condition as the defendant's trestle, but it is the province of the jury to determine, under all the circumstances of the case, whether the defendant has or has not been guilty of negligence. "Negligence in a particular case is generally a matter for the jury to determine, and it is always so when the measure of duty is ordinary and reasonable care."—*Williams v. Sleepy Hollow M. Co.*, 37 Colo. 62; *Rimmer v. Wilson*, 93 Pac. Rep. 1110.

And even though the facts are not disputed, but are such that different minds might honestly draw different conclusions 'from them, the case must be left to the jury for its determination. So here, some persons might conclude that, in the exercise of ordinary diligence to provide a reasonably safe place for its employees, the defendant was not guilty of negligence in failing to plank between the rails of the track on the trestle, while other persons would regard the failure to plank the entire portion of the trestle an act of negligence, and that a very slight degree of care would prompt the officers of the company to plank the track. And when it is considered that, to plank the track involved but slight expense, and would not in the slightest degree interfere with the maintenance and operation of the road, and that there is no necessity for leaving the track in such a condition, we cannot say, as a matter of law, that the company was not negligent, and that the case should have been taken from the jury. Where the facts are not in dispute and there can be but one opinion as to their effect, the question is one of law. —*Griffith v. Denver Consolidated Tramway Co.*, 14 Col. App. 504; *Farrier v. Colo. Springs Rapid Transit Ry. Co.*, 42 Colo. 331; *Liutz v. Denver City Tramway Co.*, 43 Colo. 58; *Gilbert v. Burlington, etc., Ry. Co.*, 128 Fed. Rep. 529.

Indeed, it would be extremely difficult to sustain a verdict for the defendant, if based upon the ground that the defendant was not guilty of negligence.

Upon the question of the assumption of risk, the court instructed the jury fairly and fully. No objection was made nor exception saved by the defendant to the instructions given upon this subject. The instructions declare it to be the law that, where an employee has, or might by the exercise of due care

have knowledge, of defects or imperfections, and continues in his master's service without objection, he cannot recover for injury caused by such imperfections; that the employee is presumed to have taken notice of all risks and dangers open to observation; that it is his duty to use reasonable care to examine his surroundings; that if the employee voluntarily continues in the service of his master with knowledge or means of knowledge equal to that of his master, and continues in the service without objection and without promise on the part of the master to change the conditions, the employee assumes the consequences resulting from such conditions, and that he assumes the hazard of the ordinary perils.

The plaintiff testified that the yard in which he was working extended for a distance of about three miles east and west, and that there were many side-tracks and switches; that although he worked in the yard for quite a time and had worked upon the trestle, he had never been called to work upon the unplanked portion of it. The trestle, the scene of plaintiff's injury, was not under his daily observation and inspection, and it was only when coal was needed that the services of a switchman were required; and although it was shown that the plaintiff was employed on the trestle frequently, his usual employment was in other portions of the yard. At the time plaintiff was injured, there were cars standing on the trestle covering a part of the planked, as well as the unplanked, portion of it, and as plaintiff was on the car being pushed on the trestle, the unplanked portion was hidden from his view by the standing car. We cannot say, as he had never worked upon the unplanked portion of the trestle, although he may have known that a portion of the trestle was unplanked, that, as a matter of law, it was his duty to have discovered and to have known where the

planking ended, and that he assumed the risk of an injury occasioned by his falling through the unplanked portion, under the circumstances shown by the record.

The plaintiff, in his testimony in explanation of his conduct while coupling the cars on the trestle, said: "I was directed by the foreman of the switching crew to take the loads of coal onto the trestle. Then I got back on the rear car and the train was backed up. I had to couple onto the car that was standing on the trestle to keep it from going over the end of the track—it was not safe to butt against it and let it go. I rode up on the trestle, hanging on the car with my foot in the stirrup. * * * When the cars came together, I went in to make the coupling. The west end of the car that was standing on the trestle was over on the planking four or five feet. When the train struck the car it sprang back to the east, and when I attempted to make the coupling I found that the draw-bars were of unequal height and I could not get the link up enough to join. So I was trying to take this link out, walking along with the car. While I was doing this, I had to pound the pin to get it out. I reached out and picked up a piece of iron that happened to be lying there, and pounded the pin by rapping it on the head, trying to loosen it. I did loosen it, and got it out after I had pounded a little. I had the link in one hand and the pin in the other. At the time I fell, I still had the link in my hand, and I dropped the pin just before I went into the hole. I stepped into the first opening."

It appears that the foreman was standing on the walk outside the track while plaintiff was endeavoring to make the coupling and when he fell.

The claim of the defendant is, that the plaintiff voluntarily chose a dangerous method of coup-

ling the cars, when a safe method was equally practicable, and carelessly and recklessly exposed himself to unnecessary danger. That, as there was nothing to interfere with the plaintiff's seeing that the planking did not extend to the standing car to which he was attempting to couple the train, he should have stopped the train, which would have enabled him to have made the coupling without injury to himself, and that having chosen a dangerous method of coupling the cars when a safe method of coupling was practicable, his failure to ascertain the nature of the surface constituted contributory negligence as a matter of law. These questions, we think, were for the jury to determine. Whether the plaintiff saw, or by the exercise of reasonable caution should have seen, that the track was unplanked, is not a question of law, but a question of fact for the jury's determination. Whether it was or was not the duty of the plaintiff, under all the circumstances shown, to have stayed out from between the cars, waited until the train was stopped, and then made the coupling, it is not our province to determine. Whether the plaintiff did or did not, under the facts disclosed by the record, choose a more dangerous method of making the coupling, and that by reason of his selecting the more dangerous method he was injured, is for the jury to pass upon, and is not a question of law for the decision of the court. Where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, to be settled by the jury; and this, whether the uncertainty arises from a conflict of the testimony or because of the facts being undisputed, fair-minded men will honestly draw different conclusions from them.— *Richmond and Danville R. R. Co. v. Powers,* 149

U. S. 43; *Colorado Midland Ry. Co. v. O'Brien,* 16 Colo. 219.

Moreover, the plaintiff was performing his duty under the immediate direction of his foreman, who stood on the walk only a few feet away. The foreman testifies that, as the train was backing up the incline leading to the trestle, it could not be stopped. The plaintiff testified that he "had to couple onto the car that was standing on the trestle to keep it from going over the end of the track; it was not safe to butt against it and let it go." Here, then, was an emergency that gave him no time for reflection, and even though he saw that the track was unplanked in front of him, he was, to save the company's property, required to make the coupling as soon as possible. And, although he could have stepped from between the cars and thus avoided an injury, under such circumstances, being put in imminent peril through the negligence of the defendant, the error of judgment cannot in law be imputed to him as contributory negligence.—*S. C. M. Co. v. McDonald,* 14 Colo. 191; *Denver & B. P. T. Co. v. Dwyer,* 20 Colo. 132; *Union Pacific Ry. Co. v. Kelley,* 4 Col. App. 325.

Therefore, the court did not err in submitting the question to the jury.

Complaint is made that the court refused to give certain instructions offered by the defendant. A comparison of the instructions offered with those given shows that the propositions of law contained in the refused instructions are fairly presented by the instructions given.

Other assignments relate to the reception of testimony over the objection of defendant, but as we do not perceive that the defendant could have been prejudiced by the ruling of the court, we shall not consider the assignments predicated upon the al-

leged erroneous rulings. The finding that the defendant was guilty of negligence is, we believe, fully sustained by the record, and as substantial justice has been done, we shall affirm the judgment.

*Affirmed.*

Mr. Justice Goddard and Mr. Justice Bailey concur.

*Rehearing denied,* April 5, 1909.

---

Mr. Justice Gabbert specially concurring:

I concur in the judgment, denying a rehearing, but do not assent unqualifiedly to what might be construed, from the language of the opinion, to be a decision to the effect that, where it is shown that, although an appliance used by a railroad company is constructed in the manner adopted by other well-managed railroads, it is still the province of a jury to determine whether or not the railroad company was guilty of negligence in so constructing it. It appears from the testimony, without contradiction, that the trestle upon which plaintiff was injured was constructed in the manner adopted by other railroads; hence, counsel for the defendant company earnestly contend that, in law, no negligence on the part of the railroad was shown. In support of this contention, they urge that an employer is liable for the consequences of negligence, and not of danger, and that the test of negligence in methods, machinery and appliances, is the ordinary usage of the business in which such methods, appliances and machinery are used. That this is the general rule cannot be questioned, but is it applicable to the case at bar?

Whether a rule of law is applicable to a given case depends upon the facts, so that the precise question presented is, whether the facts upon which

negligence is predicated present a question on that subject which it was proper to submit to the determination of the jury.

Plaintiff claims the railroad company was negligent because the space between the rails on the trestle track was not planked throughout its entire length. That it was not so planked is conceded, and that plaintiff was injured because of the absence of such planking cannot be doubted. It appears from the testimony that the car he was attempting to couple to the train was standing with the end towards him about five feet over the planking between the tracks; that he failed to make the coupling; that the impact caused the car to recede; that in following it up, he stepped off the end of the planking between the ties, and, being unable to extricate himself, was injured by the moving train. In these circumstances, the plaintiff was exposed to a hidden danger obvious to those familiar with the structure and its use. It is the duty of an employer to exercise reasonable care to protect his employees from latent danger. Whether or not the employer has complied with the law in this respect must be determined by what an ordinarily prudent person, entrusted with a like duty, with due regard to the danger to be guarded against, would have done under similar circumstances. This rule was not satisfied by showing that trestles used by other railroad companies are constructed similar to that of the defendant, for the question still remains, in the circumstances of this case (notwithstanding such showing), was the railroad company negligent in failing to anticipate and provide against such an occurrence as happened plaintiff, by the use of such reasonable precautions to prevent it as would have been adopted by prudent persons?