## No. 11,497.

### STENGER, RECEIVER OF THE DENVER TRAMWAY CO. *v.* ARNOLD.

Decided January 31, 1927.

Action for personal injuries. Judgment for plaintiff.

### *Reversed.*

1. CARRIERS—*Street Cars—Personal Injuries—Contributory Negligence.* A passenger, whether from illness or otherwise, who voluntarily leaves a place of safety in a moving street or railway car, and places himself in a position of danger or greater danger than the one furnished him by the carrier, does so at his own risk.

2. PERSONAL INJURIES—*Carriers—Contributory Negligence.* Passenger on a street car, familar with the cars and line of road, who voluntarily places himself in the pit near the door of the car from which he was thrown while it was rounding a curve, held under the facts disclosed, to be guilty of such contributory negligence as precluded him from recovering for injuries sustained.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Mr. GERALD HUGHES, Mr. H. S. ROBERTSON, Mr. W. A. ALEXANDER, Mr. MONTGOMERY DORSEY, for plaintiff in error.

Mr. O. A. ERDMAN, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

IN this action for damages against Stenger, as receiver for the Denver Tramway Company, to recover damages

for personal injuries alleged to have been sustained while
he was riding as a paying passenger in one of its cars,
the plaintiff Arnold had judgment for $5,178.00 which the
defendant in this review asks to have set aside. The ac-
cident happened on the Leyden suburban line on a regular
trip from the town of Arvada to the city of Denver.
Arnold it seems lived in Arvada and his place of work
was in Denver and he used the street cars going to and
returning from work and was familiar with this route.
The car in which he rode was like those in common use
by the carrier. There were two compartments or divi-
sions, a front and back. The place of entrance and exit
is on the right side of the car midway between the two
parts. Passengers in entering a car pass from the steps
to the pit, and in departing, pass from the pit to the
steps and thence to the street. This pit is a space be-
tween the front and rear parts of the car, the floor of
which is several inches lower than the level of the floor
of the parts of the car where the seats are. This door-
way or vestibule is left open or closed by the conductor
at his convenience. There is no rule of the company re-
quiring the mechanical doors, which are operated and
controlled by the conductor, to be closed while the car is
in motion, and there is no claim that any statute or
municipal ordinance requires them to be closed at such
times. As plaintiff often rode in these cars he was
familiar with this custom. This vestibule was not closed
when the car left Arvada and it was open when the ac-
cident occurred, while the train was running at the rate
of about thirty or thirty-five miles an hour. Soon after
the car left Arvada the plaintiff Arnold, who was sitting
with a friend, Mr. Luschen, in one of the rear seats, told
Mr. Luschen he felt sick and asked him if he would take
him home and Luschen said that he would. Thereupon
Luschen rang the bell to signal the conductor to stop the
car at the next stopping place, which was College station,
only a short distance away. When these two men got up

from their seats they walked side by side toward the place of exit, Luschen holding Arnold by the arm. When they stepped into the pit Arnold took hold of the handrails at the sides of the car, and Luschen remained standing by his side. While they were walking from the seat to the vestibule, or while standing there before the car reached College station, someone made a suggestion—and there is no testimony whether it was by the conductor or some passenger—that Arnold should be taken on to Junction, the next station beyond College, where he would have shelter and a place to rest until a returning car could take him back to Arvada. So far as we can determine from the record, neither Arnold nor Luschen nor anyone else objected to, or expressly acquiesced in, the suggestion. At all events after it was made the car stopped at College station, whether in obedience to the signal given by Luschen or not the evidence does not show, but while it was standing there passengers left the car and other passengers got on. Meanwhile Arnold's hands were on the handrails and Luschen was standing by his side. They were in this position when the car started from College station on the way to Junction and so remained until it had gone a distance of three to four hundred yards and while running at thirty or thirty-five miles an hour, when it reached a place in the track where there was a slight curve the car lurched and tossed Arnold out of the car which, as he says, inflicted the injuries upon him for which he seeks damages in this action. In the cross-examination of Luschen, who at the request of the plaintiff was assisting him down the aisle and to the pit where they stopped with a view to leaving the car at College station and who remained by the plaintiff's side until the accident occurred, he was asked why it was that, after they reached the pit he let go of Arnold's arm which he held as they passed down the aisle, and he replied: "Because it was not necessary to hold him, that is why."

A number of assignments of error have been made and argued by the defendant company. The trial court is said to have erred in various particulars in its rulings admitting and rejecting testimony; in denying the defendant's application for a new trial on the ground of newly discovered evidence which is material to the issues and could not, by due diligence, have been, and was not, discovered before the trial. Assignments of error are directed to the giving and refusal of instructions, and emphasis is laid upon the verdict as excessive and as clearly showing it to be the result of passion and prejudice of the jury. We have examined with care the various objections interposed by the defendant. We are free to say that, if it were necessary to pass upon these assignments, we would find it difficult, under the authority of a number of our previous cases, to uphold some of the rulings of the trial court. Particularly are we doubtful of the correctness of the denial of a new trial on the ground of newly discovered evidence. While we shall not base our decision—because there is no necessity of doing so—upon this refusal, we cannot pass it by without the suggestion that if the evidence which the defendant says it could produce should be believed by a jury, it would strongly tend to show that the extent and nature of plaintiff's injuries were greatly exaggerated and that they were inflicted before this accident occurred, as the result of another act committed by another alleged wrongdoer, for which plaintiff was claiming compensation before our State Industrial Commission.

We think this judgment ought not to stand, upon the ground alone that the plaintiff's own negligence, if it was not the sole cause of, it directly contributed to, his alleged injuries. The testimony indicates that the plaintiff is a man of intelligence. There is no evidence that at the time he entered the car he was ill or unable to take ordinary precautions for his own safety during the journey. When he complained to Luschen that he felt sick, and the latter rang the bell as a signal

to the conductor to stop at the next station, and when the two men walked down the aisle together and stood in the doorway when Luschen let go of the plaintiff's arm, there is no testimony that there was anything in the appearance of plaintiff to indicate to the conductor that he was mentally unable to take ordinary precautions for his own safety, or that he was at that time physically incapacitated. There is not any evidence whose tendency would naturally lead the conductor to believe that the plaintiff needed assistance, other than that which he was receiving from Luschen, his own selection, or that the plaintiff required any help even from him. Certain it is that the conductor was not asked to care for the plaintiff and he did not attempt to do so. There is the testimony of two witnesses who sat in the front seat of the rear compartment, directly behind the plaintiff while he was standing in the pit, that he did look rather pale. Neither the conductor nor anyone else in the car saw any such indication of illness or physical inability. Aside from this and what is conclusive, if the plaintiff was at this time in need of assistance, he selected his friend and companion Luschen to furnish it, and Luschen himself testifies, and there is no contradiction of the testimony, that the reason he let go of the arm of the plaintiff while they were standing in the pit with the plaintiff's hands firmly grasping the handrails, was that there was no further necessity for him rendering assistance. If that means anything it means that the plaintiff was able to take care of himself. A passenger, whether from illness or otherwise, who voluntarily leaves a place of safety in a moving street car or railway car and places himself in a position of danger or greater danger than the one furnished him by the carrier, does so at his own risk. There were plenty of vacant seats in this car, both in the front and rear parts, where the plaintiff might have remained until the car stopped for passengers to alight. We do not say that it was negligence for the plaintiff to walk from the seat

to this pit before the car stopped, but we do say that the movement of this car at the customary rate of speed it left College station on its way to Junction, the next station, was known to plaintiff and he knew that there was a curve in the track and there is nothing whatever to show that his mind was clouded or that he might not have stepped to one of the seats, a place of safety, or stepped back from the doorway, instead of remaining practically on the top step of the car while it was going at a speed of thirty or thirty-five miles an hour around a curve of whose existence he was aware. Numerous cases might be cited in support of our conclusion. We are convinced from reading all the evidence in this case that there could not be a plainer case of negligence on the part of an injured passenger which, if not the sole cause, was a directly contributing cause, of the injury, in the absence of which the accident would not have occurred. The following, however, we cite as directly in point: *Mutual Ins. Co. v. Tweed,* 74 U. S. 44, 52, 19 L. Ed. 65; *Snyder v. C. S. & C. C. D. Ry. Co.,* 36 Colo. 288, 85 Pac. 686, 8 L. R. A. (N. S.) 781, 118 Am. St. Rep. 110; *A. T. & S. Fe Ry. Co. v. Calhoun,* 213 U. S. 1, 29 Sup. Ct. 321, 53 L. Ed. 671; *Quinn v. Ill. Cent. R. R. Co.,* 51 Ill. 495; *Savage v. Ill. Cent. R. R. Co.,* 164 Ill. App. 634; *Watson v. Portland, etc., Ry. Co.,* 91 Me. 584, 40 Atl. 699, 44 L. R. A. 157, 64 Am. St. Rep. 268; *Baltimore, etc., Ry. Co. v. Cason,* 72 Md. 377, 20 Atl. 113; *Jackson v. Crilly,* 16 Colo. 103, 26 Pac. 331; *D. & R. G. R. R. Co. v. Fotheringham,* 17 Colo. App. 410, 68 Pac. 978; *Straight v. Western Light & Power Co.,* 73 Colo. 188, 214 Pac. 397.

This case of Straight says that even where one is injured by the negligence of another he cannot recover damages if by the exercise of ordinary care he might have avoided the consequence of that negligence. There is no testimony here that the plaintiff was incapacitated or so ill as not to be aware of the danger he incurred

by exposing himself as he did. Had he exercised the ordinary care of an ordinarily intelligent and capable man, and if he had not voluntarily placed himself in a position of known danger, he would not have received this injury. The judgment must be and it is reversed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE SHEAFOR concur.