## No. 11,676.

### ARPS v. CITY AND COUNTY OF DENVER, ET AL.

Decided July 5, 1927.    Rehearing denied July 22, 1927.

Action for damages.    Judgment of dismissal.

### Reversed.

1. TRIAL—*Jury Questions.* If a question provokes debate among reasonable men, whether they agree or not, it is for the jury.

2. NEGLIGENCE—*Contributory.* In an action for damages growing out of an accident resulting from an automobile being driven into a pile of sand on a city street, it is not enough to prevent plaintiff's recovery to show merely his negligence; it must have been the sole or contributing cause of the injury.

3. TRIAL—*Nonsuit.* On motion for nonsuit plaintiff is entitled to the most favorable construction that can be given to his evidence.

4.  AUTOMOBILES—*Right of Way.* Although an automobile driver has the right of way, he is not thereby absolved from the duty of exercising reasonable care.

5.  *Accident—Reasonable Care.* In an action for damages resulting from driving an automobile onto a pile of sand in a city street, it is held that plaintiff's duty was that of ordinary and reasonable care under all the facts and circumstances.

6.  NEGLIGENCE—*Measure of Duty—Jury Question.* When the measure of duty is ordinary and reasonable care, it is a question for the jury.

7.  *Court Question.* It is only in the clearest of cases, when the facts are undisputed and it is plain that all intelligent men can draw but one inference from them, that the question of ordinary care is one of law for the court.

8.  *Court Question.* In an action for damages alleged to have been occasioned by defendant's negligence, to justify the withdrawal of the case from the jury, not only the facts should be undisputed, but the conclusion to be drawn from those facts should be indisputable.

9.  MUNICIPAL CORPORATIONS—*Negligence.* In an action against a city for damages alleged to have been occasioned by neglect of the city and a contractor to safeguard a pile of sand in a street onto which plaintiff drove his automobile, it is held, that while it was the duty of plaintiff to exercise reasonable care, he had a right to assume that defendants would do likewise.

10. NEGLIGENCE—*Anticipated.* In an action for damages against a city growing out of an automobile collision with a pile of sand on a street, it is held that plaintiff was not bound to anticipate negligence on the part of defendant.

11. *Contributory—Jury Question.* A party suddenly realizing that he is in danger from the negligence of another is not to be charged with contributory negligence for every error of judgment when practically instantaneous action is required. What time he had for consideration, and what, under the circumstances was reasonable prudence in that time, is for the jury.

12. *Automobiles—Railroad Crossing Rule.* The rule that it is the duty of a traveller to stop, look and listen, before crossing a railroad track, has no application to a case where one drove his automobile against a pile of sand on a city street after sunset, resulting in injuries to himself and car.

13. EVIDENCE—*Common Knowledge.* It is common knowledge that sub-
stantial objects because of their composition or coloring, and the
coloring of the surface or object upon which they rest, are visible
in greatly varying degrees when artificial light is thrown upon
them. They are not necessarily clearly visible.

14. NONSUIT—*Presumption.* On a motion for nonsuit plaintiff's state-
ments must be taken as true.

*Error to the District Court of the City and County of
Denver, Hon. Charles C. Butler, Judge.*

Mr. C. H. PIERCE, Mr. J. B. MANBY, JR., for plaintiff
in error.

Mr. HENRY E. MAY, Mr. R. T. WILSON, Messrs. SMITH
& BROCK, Mr. MILTON SMITH, JR., for defendants in
error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the
court.

THE parties' names appear here in the same order as
at the trial, and will be referred to as plaintiff and de-
fendants when not otherwise designated.

Arps sued the City and County of Denver and D. G.
Gordon, doing business as the Gordon Construction Com-
pany, to recover for personal injuries and also for dam-
ages to an automobile that plaintiff was driving, which
was overturned on a pile of loose sand and gravel left
by the construction company across a city street. Plain-
tiff alleged negligence; defendants claimed contributory
negligence. At the close of plaintiff's testimony, the
court granted a nonsuit on the ground of contributory
negligence. Plaintiff brings the case here for review.

The construction company had a contract with the city
to pave a nearby alley and had dumped the sand and
gravel on the street. It made a pile about four and one-

half to five feet high and extended along the street for a distance of about seventy-five to eighty-five feet. It almost blocked East Twenty-eighth avenue, between Cherry and Dexter streets, when the accident occurred. The only place on the street not blocked by the obstruction was about five or six feet in width, on the opposite side from which plaintiff was driving. He was driving on the right hand side of the street. There were no lights or warnings to indicate the presence of the obstruction on the street, although section 1878 of the Denver Municipal Code, 1917, provides that "red lights shall be placed and maintained from sunset to sunrise of each day at both ends of every obstruction upon any street, and at intervals of seventy-five feet along the same."

After sunset on October 7, 1924, at about 6:30 p. m., plaintiff was driving an automobile along East Twenty-eighth avenue, in an easterly direction, and ran into and upon the pile of sand and gravel, resulting in the overturning of the automobile on the pile, and the consequent injuries to himself and to the car that he was operating. The testimony showed that at the time of the injury the sky was cloudy; the evening was dark except for some reflected light from the sun shining on the clouds; that the gravel was of a grayish color and the street a "dusty color"—"just at that time of night," said the witness, "you could hardly tell the gravel from the ground."

We quote the following from the questions propounded to plaintiff, and his answers thereto:

"Q. What lights were you using on your car? A. I was using the dim lights; I never use my bright lights in town unless there is some bad corner; if there is a bad corner I switch them on to warn any motorist coming from the side; otherwise I use my dim lights unless I want to go a little bit faster.

Q. Mr. Brock has been interested to discover how far dimmers throw a light. This was your Stephens car; how far do the dimmers throw a light? Can you help us

any on that? A. Well, if anybody has driven a car with the regulation dim lights on they ought to know; the light shows just right down six or eight feet to the ground, and then it is just a diffused light which if any particular object showed up then, oh, standing up pretty high, 20 feet, you will probably catch sight of it, but it is —but there is no distinct light, from where you are sitting you do not see any light on the road out twenty feet in front of you.

Q. Could you see this pile of sand and rock before you got onto it that night? A. No sir, I know I was looking ahead too.''

The following is from plaintiff's cross-examination:

''Q. When did you first learn that there was sand and gravel out here upon Twenty-eighth Avenue? A. When I struck it.

Q. You had not seen it in passing along before? A. No sir.

Q. How close were you to it when you saw it? A. I do not imagine I was more than, oh—all I recollect is just that kind of a glimpse, right as I was right onto it, probably five or six feet.

Q. Could you see at that time that pile of sand from the west side of Cherry Street? A. From the west side?

Q. Yes. A. No sir.

Q. Or from the center of Cherry Street? A. No, I could not do so.

Q. If a person had been walking across Twenty-eighth Avenue going from the walk on the south to the walk on the north or from the walk on the north to the walk on the south, could you have seen that person as you approached Cherry Street? A. Yes, I imagine I could have.

Q. You could have seen the individual? A. Probably you could see an individual before you saw anything on the road.

Q. If that is what you could do, then could you have seen this pile of sand and gravel? A. I—I could not answer that, because I have never tried.

Q. Now I want you as definitely as you can to state the length of the light in front of your car made by your lights which you had on that night; that is, how far did those lights extend from the car? A. About, probably the first place that you would notice them as a direct light on the ground would be maybe eight feet.

Q. Not more than eight feet? A. Not more than eight or ten feet.

Q. Traveling as you were traveling, could you have stopped your car within eight feet? A. Well if a person had—no you could not quite, you could almost, but you could not quite if you had seen it with the idea of stopping there.''

The distance that the car went up and on the sand and gravel pile is not exactly stated; it is given variously from ''about a car's length,'' to twenty-seven feet. Plaintiff turned into and upon the obstruction to avoid striking a telephone pole support, which he would have struck if he had not turned.

The car belonged to plaintiff's mother. Before this action was commenced, the mother assigned to plaintiff ''for his own use and benefit,'' her claim for damages against the defendants. It was so alleged in plaintiff's complaint and admitted.

There was ample evidence of defendants' negligence and of the injuries to plaintiff and to the automobile. They may be taken as accepted facts. Our review treats only of the claim as to plaintiff's alleged contributory negligence.

1. The large number of cases from other jurisdictions, cited in the briefs, might lead one to suppose that there is a dearth of local precedents. No two cases are alike, particularly in negligence and contributory negligence, but a review of the Colorado decisions will disclose an amplitude of well defined legal principles repeatedly employed in cases of the same general nature, quite sufficient for our purposes here, although we shall refer to a few of the decisions in other jurisdictions by way of

illustration. As to the general principles germane to the case at bar, there is a continuity and consistency manifest in all of the Colorado cases, even where in later decisions no direct reference is made to those that went before. If there seems to be any noticeable variation in the adjudications wherever found, one can generally put one's finger on it by a simple reference to different states of facts. As said by the late Chief Justice Cooley in *Railroad Co. v. Van Steinburg,* 17 Mich. 99, 121, "The difficulty in these cases of negligent injuries is, that it very seldom happens that injuries are repeated under the same circumstances; and, therefore, no common standard of conduct by prudent men becomes fixed or known." These remarks of that learned jurist and author have been quoted not less than three times in decisions of this court and our former court of appeals. *Phillips v. Denver City Tramway Co.,* 53 Colo. 458, 462, 128 Pac. 460, Ann. Cas. 1914B, 29, and other cases referred to hereafter in paragraph 9 of this opinion.

2. The theory upon which the nonsuit was granted was the conclusion of the trial court that plaintiff's testimony showed on its face that he was driving at night in a dark place, and was going so fast that he could not stop or avoid the obstruction within the distance of his lamps; that if he had not been so driving, the injury would not have occurred; that he was therefore guilty of contributory negligence, and so, it was held, he could not recover.

Our most serious difficulty is to discover in the record the statements attributed to the plaintiff. We have been unable to find them. Reference to the last question and answer of the witness, the plaintiff Arps, quoted in the above statement of facts, would seem to indicate that what the witness really said was that he could almost but not quite stop within the distance of his lights. It might make a vast difference in the nature of the accident, whether this was sufficient to have avoided it. To illustrate: To be able to "almost" stop an automobile at the brink of a chasm, or excavation in the street, or before

a moving railroad train, would be manifestly too late, but to have been able to "almost" stop before a sloping sand and gravel pile in the street, if the nature of the obstruction had been such that plaintiff could have seen it in time, it is possible it might have been enough to have given him an opportunity to have retarded the progress of the car so as to have avoided its being overturned on the sand pile. How can we declare, as a matter of law, that it would have turned over under such circumstances, any more than we can say that it would not have done so? If the question provokes debate, among reasonable men, whether they agree or not, under the repeated decisions of this and other courts, it is a jury question, for how can we say that six or twelve men might not look upon it differently? Is the hypothesis correct that the only way to prevent an accident is to come to a dead stop? At least, unless the construction to be placed upon the evidence is conclusive one way or the other, the debate should be conducted in the jury room.

3. We shall cite some of the many authorities sustaining the above propositions, most of them from our own previous decisions. If they appear to be in conflict with those of other states, we must follow our own, for ours are too long established to change, and we believe them to be in harmony with the best reasoned cases in other jurisdictions. *Murphy v. Hawthorne,* 117 Or. 319, 244 Pac. 79, 44 A. L. R. 1397, and other cases there cited. It is only fair to say before citing further authorities, that we fully understand that the honorable trial court was cognizant of them, and that if his views are not the same as any of our own, in their application to the case before us, it is only on questions of fact and the conclusions to be deduced therefrom, about which reasonable men may differ.

4. In *Martin v. Carruthers,* 69 Colo. 464, 195 Pac. 105, (Denison, J.,) it was held that the failure of plaintiff to carry two lights, as required by statute, if unexplained or unjustified, was negligence per se, but since there was

room for two opinions under the evidence as to whether that negligence was a cause contributing to the collision, it was for the jury. Held also, whether plaintiff drove too fast or neglected to lower his speed were questions of fact for the jury.

5. Both principles followed in *Martin v. Carruthers, supra,* have been long established. It is not enough to prevent plaintiff's recovery to show merely his negligence, if he was in fact negligent. It must have been the sole or contributing cause of the injury, without which it would not have happened. "It must appear that there was a causal connection between such act or omission and the injury complained of." Blashfield Cyc. of Automobile Law, § 10, p. 1209. *Jackson v. Crilly,* 16 Colo. 103 107, 26 Pac. 331; *Gregoric v. Percy-LaSalle M. & P. Co.,* 52 Colo. 495, 499, 122 Pac. 785, Ann. Cas. 1913E, 1030; *Stenger v. Arnold,* 81 Colo. 33, 253 Pac. 392; *City of Pueblo v. Smith,* 3 Colo. App. 386, 391, 33 Pac. 685.

6. On motion for nonsuit, plaintiff is entitled to the most favorable construction that can be given to his evidence. Denison, J., in *Janeskie v. Kaib,* 76 Colo. 148, 230 Pac. 392; *Denver City Tramway Co. v. Wright,* 47 Colo. 366, 370, 107 Pac. 1074; *Colo. & So. Ry. Co. v. Lauter,* 21 Colo. App. 101, 108, 121 Pac. 137; *Boyd v. Close,* 82 Colo. 150, 257 Pac. 1079.

7. Although one has the right of way, one is not thereby absolved from the duty of exercising reasonable care. *Campion v. Eakle,* 79 Colo. 320, 323, 246 Pac. 280, 47 A. L. R. 289; *Golden Eagle Co. v. Mockbee,* 68 Colo. 312, 315, 189 Pac. 850; *St. Mary's Academy v. Newhagen,* 77 Colo. 471, 238 Pac. 21, 22.

8. The measure of plaintiff's duty was that of ordinary and reasonable care under all the facts and circumstances. *Phillips v. Denver City Tramway Co., supra,* and cases there cited.

9. When the measure of duty is ordinary and reasonable care, it is a question for the jury. *Phillips v. Denver City Tramway Co., supra; Rimmer v. Wilson,* 42 Colo.

180, 183, 93 Pac. 1110; *Williams v. Sleepy Hollow Mining Co.*, 37 Colo. 62, 69, 86 Pac. 337, 7 L. R. A. (N. S.) 1170, 11 Ann. Cas. 111. When such is the measure of duty, it has even been said in the above cases that it is always a matter for the jury to determine, as the standard of duty is variable. See also to same effect *Jackson v. Crilly, supra.*

Chief Justice Cooley, in *Railroad Co. v. Van Steinburg, supra*, clearly states his objections to the judge fixing in his own mind a "standard of ordinary prudence" and making his own opinion a "definite rule of law." His remarks are quoted in *Phillips v. Denver City Tramway Co., supra*, and in *Williams v. Sleepy Hollow Mining Co., supra*, and also in *Allen v. Florence & C. C. Ry. Co.*, 15 Colo. App. 213, 219, 220, 61 Pac. 491.

10. "It is only in the clearest of cases, when the facts are undisputed, and it is plain that all intelligent men can draw but one inference from them, that the question is ever one of law for the court." Whitford, J., in *Denver Alfalfa M. & P. Co. v. Erickson*, 77 Colo. 583, 586, 239 Pac. 17; *Phillips v. Denver City Tramway Co., supra; Louthan v. Peet*, 66 Colo. 204, 206, 179 Pac. 135. Denison, J., in *Janeskie v. Kaib, supra.* Burke, J., in *Rocky Mt. Fuel Co. v. Tucker*, 72 Colo. 308, 311, 211 Pac. 383.

11. The same thing has been stated in other ways. "When there is uncertainty," it is a jury question. *Colo. Mid. Ry. Co. v. Brady*, 45 Colo. 203, 210, 101 Pac. 62. To justify the withdrawal of the case from the jury, not only the facts should be undisputed, but the conclusion to be drawn from those facts should be indisputable. *Monarch Min. & Dev. Co. v. DeVoe*, 36 Colo. 270, 277, 85 Pac. 633; Wigmore on Evidence, (2d Ed.) vol. 5, § 2567, p. 570. If there is room for a difference of opinion to be drawn from conceded facts, it is a jury question. Shearman & Redfield on Negligence, (6th Ed.) vol. 1, § 54, p. 108. And it is always a question for the jury "where the conclusion is fairly debatable or rests in doubt." *Phillips v. Denver City Tramway Co., supra.*

And also where there is "room for two opinions." *Martin v. Carruthers, supra.*

"Where, in an action for a personal injury, the question of contributory negligence of the person injured is dependent upon inferences to be drawn from acts and circumstances from which different intelligent men might honestly reach different conclusions, it is for the jury to determine, under appropriate instructions, whether or not contributory negligence has been established. *D. & R. G. R. R. Co. v. Spencer,* 27 Colo. 313." *Gregoric v. Percy-LaSalle M. & P. Co., supra; Vindicator Cons. G. M. Co. v. Firstbrook,* 36 Colo. 498, 509, 86 Pac. 313, 10 Ann. Cas. 1108; *Williams v. Sleepy Hollow Mining Co., supra; Ry. Co. v. Stout,* 17 Wall. 657, 21 L. Ed. 745; Blashfield Cyc. Auto. Law, vol. 2, § 13, p. 1776. And if there is sufficient evidence to go to the jury, judgment of nonsuit will be reversed. *McDaniels v. George Sell B. & C. Co.,* 68 Colo. 202, 187 Pac. 731.

12. On the other hand, if the undisputed facts are such that the inference of contributory negligence is the only conclusion that can be logically deduced, the question is one of law for the court. *D. & R. G. R. R. Co. v. Spencer,* 27 Colo. 313, 317, 61 Pac. 606, 51 L. R. A. 121; *Victor v. Carbis,* 59 Colo. 92, 95, 147 Pac. 331; *Jackson v. Crilly, supra.*

In *Rosenbaum v. Riggs,* 75 Colo. 408, 410, 225 Pac. 832, we held that if it appears from plaintiff's own testimony that he is guilty of contributory negligence, he cannot recover; that it then became a question of law for the court, but this implies first, that plaintiff's acts or omissions were contributing causes, and second, that the facts were such that reasonable men could draw only one conclusion from them.

13. While it was the duty of plaintiff to exercise reasonable care, he had a right to assume that the defendants would do likewise. *City of Pueblo v. Smith, supra; Phillips v. Denver City Tramway Co., supra,* (in 53 Colo. 458, 465); *Kett v. Colo. & So. Ry. Co.,* 58 Colo. 392, 399,

146 Pac. 245; *Vindicator Cons. G. M. Co. v. Firstbrook, supra; Golden Eagle Co. v. Mockbee, supra.*

Plaintiff was not bound to anticipate negligence upon the part of defendants. Shearman & Redfield on Negligence, (6th Ed.) § 92, p. 229. Applied here, it means that while plaintiff might expect that streets and alleys would be repaired, he had a right also to anticipate red lights on obstructions between sunset and sunrise, a reasonable and humane precaution to be observed, with or without the ordinance. To hold otherwise would be to penalize plaintiff for not regarding his city and the construction company as potential lawbreakers, a thought that would be discreditable to all. There was an implied invitation to the public to make use of the entire street. *City of Pueblo v. Smith, supra.*

14. "A party suddenly realizing that he is in danger from the negligence of another is not to be charged with contributory negligence for every error of judgment when practically instantaneous action is required." *Denver, etc., Co. v. Dwyer,* 20 Colo. 132, 139, 36 Pac. 1106; *Montgomery v. Colo. Springs & Interurban Co.,* 50 Colo. 210, 215, 114, Pac. 659. It cannot be said that twelve men might not reasonably believe that plaintiff acted with ordinary prudence. What time he had for consideration, and what under the circumstances was reasonable prudence in that time, was for the jury. *Janeskie v. Kaib, supra.*

15. A large number of railroad crossing cases in this and other jurisdictions have been cited, holding that travelers are required to stop, look and listen at the junction of the highway with the railroad, and some have been quoted at length in defendants' brief. It would seem unnecessary to say that they are not in point or applicable to the character of obstruction in the city street encountered by plaintiff, an unprotected sand and gravel pile, or that he should be charged with like diligence in anticipating defendants' unlawful act, as he would be if it had been lawful. We held in *Phillips v.*

*Denver City Tramway Co., supra,* that the duty to stop, look and listen is not rigidly applied in the case of street railways, and we have no difficulty in saying that it does not apply at all here. While plaintiff was required to use reasonable care, we must give defendants' counsel credit for not wishing us to employ to such an extent, cases with such dissimilarity of relations.

16. There is more said in defendants' briefs about plaintiff's alleged reckless driving than the record justifies. It is not shown that plaintiff was speeding, or violating any city ordinance, and even if such ordinances were before us and if they were shown to have been violated by plaintiff, as we have said above, this alone would not be enough to complete a case of contributory negligence; so we shall not go into the question of taking judicial notice of city ordinances not pleaded or proven. The ordinance quoted as to red lights is the only one before us.

17. Counsel for defendants argue that if there had been a cripple on the street, plaintiff might have run him down, but, keeping within the record, there is no case of a cripple involved here, unless it be the plaintiff himself in his injured or crippled condition, caused by defendants' negligence, according to the testimony. And if we follow defendants' metaphysical reasoning, it is just as easy to suppose that a cripple or a babe in arms might have been riding in the automobile, and might have been killed by defendants' negligent disregard of law and the city ordinance pleaded and proven by plaintiff. Defendants are wrong in their supposition that because plaintiff hit a sand and rock pile, he might have hit a pedestrian, or that his testimony affirmatively shows any such thing. It shows the opposite. He said, "Probably you could have seen an individual before you saw anything else on the road." This is not hard to believe, nor as to any moving object, as contrasted with a stationary one, such as a sand and rock pile, much the same color as the street, according to the testimony. "It is common

knowledge that substantial objects because of their composition or coloring, and the coloring of the surface or object upon which they rest, are visible in greatly varying degrees when artificial light is thrown upon them. They are not necessarily clearly visible.'' *Baldwin v. City of Norwalk,* 96 Conn. 1, 112 Atl. 660. Furthermore one might slow down or turn aside for a pedestrian seen by the motorist, and have avoided an accident that could not have been avoided in case of a different object monopolizing most of the motorist's right of way. The instances supposed by counsel for defendants are not analogous to the case before us.

18. Cases are cited where travelers were held to a higher degree of care in driving through a fog. Whatever the rule may be in deliberately driving through a fog, which we do not decide, it is different from encountering an unexpected obstruction in the street that plaintiff had a right to believe would be clear, or that it would have a red light on it. The holding in *Baldwin v. City of Norwalk, supra,* is more to the point. And among our last announcements, a judgment of nonsuit was reversed because the trial court disregarded plaintiff's explanation that he was driving on the left hand side of the road, because he was ''handicapped by the night, the lights, the location of the cars, and falling snow.'' *Boyd v. Close, supra.* Here, as there, we hold that whether plaintiff's statements were true or false, is for the jury to determine. We must take them as true on a motion of this kind.

The multiplication of citations but emphasizes the danger of establishing a broad, fixed and absolute rule of law, and to try to apply it to all situations, without making allowances for reasonable exceptions or explanations. It cannot be done in driving, and so cannot be done in decisions; if all accidents could be standardized, decisions might be, but not otherwise; the rigidity of an absolute rule of law fixed by the court, if followed on the road in every case, might even cause an accident, or seriously

impede traffic on streets and highways. We are asked by defendants to go farther here than we have ever done in any case, and we ought not to do it.

19. The separate cause of action concerning damage to the car, like the cause of action for personal injuries, went against plaintiff because of the determination that contributory negligence was shown as a matter of law. We need not discuss it because the basis of the findings as to both have been removed by this decision. We shall not anticipate the rulings of the trial court on other matters on a new trial.

The judgment is reversed and the cause remanded with directions to set aside the judgment of nonsuit and retry the case.

MR. JUSTICE BUTLER not participating.

MR. JUSTICE DENISON specially concurring.

I concur in the result but not in all of the opinion. The city negligently failed to light a sand pile in the street. The plaintiff ran into the pile and was damaged. He was running in the night with headlights so weak that he could see but eight or ten feet ahead of his car and did not see the sand pile until almost upon it, within say six feet. Was this contributory negligence? Contributory negligence is lack of ordinary care which, if exercised, would have prevented the injury. I will assume that if the plaintiff had driven so slowly that he could have stopped within eight feet, or had had headlights such that he could have seen the pile in time to stop at the rate he was moving, the accident would not have happened; but ordinary care in any case is such kind and degree of care as ordinarily prudent men ordinarily use under the circumstances of such a case, and, though some cases go to that extent, I cannot say, as a matter of law, that the man of ordinary prudence does not, under the circumstances here shown, ordinarily drive at such a rate that he cannot stop within the scope of his headlights. I think that a matter for the jury. Hence I concur in Mr. Justice Adams' conclusion.