No. 12,616.

STOCKER *v.* NEWCOMB.
(15 P. [2d] 975)

Decided October 31, 1932.

480

Messrs. Swerer & Johnson, for plaintiff in error.

Messrs. Gillette & Clark, for defendant in error.

*In Department.*

Mr. Chief Justice Adams delivered the opinion of the court.

Mrs. Stocker sued Mrs. Newcomb to recover damages for personal injuries sustained in an automobile collision. We refer to the parties as plaintiff and defendant, as aligned at the trial. At the close of plaintiff's testimony, the court overruled defendant's motion for a nonsuit, but at the close of all testimony, directed a verdict for defendant. Judgment of dismissal followed and plaintiff assigns error.

The evidence shows that the scene of the collision was at the intersection of Thirteenth avenue and Detroit street, in the city of Denver. Thirteenth avenue runs east and west, and Detroit street north and south; the streets cross at right angles, and there is a terrace or embankment about 3½ feet high above the street level,

on the lot located on the southwest corner of the intersection; this corner lot was overgrown with weeds on the day in question, which to some extent obstructed the vision of motorists. Plaintiff was driving in an easterly direction and defendant northerly when the cars collided. Plaintiff was driving to attend a party, in company with two companions, Mrs. Bradley and Mrs. LaShell, both of whom testified upon her behalf and corroborated her statements in essential particulars. Plaintiff testified that the day was clear and the sun shining; that she drove with her mind on what she was doing; that as she approached the intersection, she slowed down to about 10 or 12 miles per hour, and almost came to a stop; Mrs. LaShell estimated the speed of the Stocker car at that point to be about 5 miles per hour, and agreed with plaintiff's testimony that the latter almost came to a stop. Plaintiff further said that she looked to the right and kept on looking until she was "absolutely crossing the street," and until her car was "across the cross walk"; that there were cars parked on both sides of Detroit street; she could see half way down that thoroughfare, or for a distance of about 100 feet, but saw no approaching car. Suddenly Mrs. Bradley exclaimed, "There is a car coming!" whereupon, according to plaintiff's testimony, "I turned and looked, I did not turn completely around, because you are not required to look behind you for cars; I looked to my right, and I could not see, I was so far through that I could not see, and I glanced in my mirror and I—at that time I stepped on the gas thinking that if anybody was going to hit me from the rear that I would be just that much farther away from them, to give them a chance to stop." Mrs. Bradley testified, "I saw a car coming very fast, exceedingly fast, and it was almost on us and I knew it was going to hit us." On cross examination, she estimated the speed of the Newcomb car to be at the rate of about 50 miles per hour. The evidence shows that at this juncture, the collision occurred; the right rear bumper, fender and wheel of

plaintiff's car was hit by a front bumper of defendant's car. Defendant's car came to a stop when it hit plaintiff's car, but the latter turned over on its left side, slid along the street beyond the center of the intersection, and landed at the north curb line of East Thirteenth avenue, about six feet east of the east line of the cross walk on the east side of Detroit street. As a result of the collision, plaintiff sustained serious personal injuries. We have not assumed to quote all of the testimony, but only enough for a consideration of the directed verdict.

Defendant pleaded two ordinances of the city of Denver, both of which plaintiff admitted. The first is section 37 of ordinance No. 85, series of 1926, to the effect that a vehicle approaching a street intersection shall grant the right of way to any vehicle approaching from the right. The other ordinance alleged and admitted to exist is, section 2 of ordinance No. 85, series of 1926, said to provide (quoting from defendant's answer, not the ordinance), "that every person operating a vehicle on the streets in the City of Denver is required to drive the same in a careful and prudent manner, at a rate of speed no greater than is reasonable and safe, having regard for the width, grade, curves, corners, traffic and use of the streets, and all other attendant circumstances, so as not to endanger the life or limb or property of any person, and that driving at a speed in excess of twenty miles per hour in that portion of the City of Denver where is located the intersection of E. Thirteenth Avenue with Detroit Street, shall not be considered careful and prudent driving."

The only question for our determination is whether under the above, plaintiff was entitled to have the case go to the jury. Counsel for defendant quote extensively from the testimony of defendant's witnesses, in contradiction of the case made by plaintiff, but we need not notice such comparisons in considering the propriety of a directed verdict. If we did, it would signal our entry into the jury box, and oust the jurors from the per-

formance of the duties for which they were lawfully summoned, namely, to try questions of fact. The lack of unanimity upon the part of the witnesses as to essential facts merely emphasizes the point that it is for the jury to decide who is right. In Thompson on Trials (2d Ed.), vol. 2, pages 1525-6, section 2268, it is appropriately said: "It is scarcely necessary to recall the principle that a nonsuit cannot be granted, or a peremptory instruction for the defendant given, where there is evidence tending to show a right of recovery in the plaintiff, although the court may believe that the *weight of evidence* is with the defendant; or, to state it more loosely, though in language which is found in judicial opinions, where, from the evidence, the jury may properly find a verdict for the plaintiff."

The learned trial court remarked, in sustaining defendant's motion, that plaintiff "was possibly not as observing as she thinks she was," but this intimation was at variance with plaintiff's testimony and that of her other witnesses, and we are constrained to say that the question was one for the jury, not the court, to determine under the evidence. The court also remarked that "There is no reliable evidence that the other car [Mrs. Newcomb's] was approaching at an enormous rate of speed." As against this, we have the testimony of one witness that defendant's car came down Detroit street at an exceedingly fast rate, which the witness estimated to be 50 miles per hour. This was two and one-half times as fast as the speed permitted by the city ordinance. Whether the testimony of this witness or that of any other witness was "reliable" was also, of course, a jury question.

Another invasion of the province of the jury was the conclusion of the honorable trial court that defendant's car did not strike plaintiff's car, but that plaintiff's car struck that of defendant. This also was contrary to the testimony of plaintiff's witnesses. Both cars were moving when they crashed together, and possibly it might be more strictly accurate to say that they hit each other,

but how, when, why, who was to blame, and with what attendant results, were questions for the jury to determine. The fact, real or supposed, that a steel bracket supporting the left end of the front bumper of defendant's car was broken off, is offered by her counsel as an argument to support their theory that plaintiff's car struck that of defendant. Non sequitur. One car might strike another with such force as to be demolished, but its wreckage would not necessarily demonstrate that it was being driven lawfully. We do not need to decide whether the comparative damage to the two vehicles is or is not the criterion as to which was the aggressor, but if it is, it should be noted that plaintiff's car got the worst of it.

█ In denying the motion for nonsuit, the court said: "I feel that this is a very close case." This fact made it a jury question, applicable to the motion for nonsuit, as well as for a directed verdict. It is settled in this state, that it is only in the clearest of cases, when the facts are undisputed, and it is plain that all intelligent men can draw but one inference from them, that the question of ordinary care is ever one of law for the court. *Arps v. City and County of Denver,* 82 Colo. 189, 198, 257 Pac. 1094, and case there cited. We recently followed the Arps case in *Sprague v. Herbel,* 90 Colo. 134, 6 P. (2d) 930. Defendant's counsel do not contend against the force of the rule, but argue that the facts are so clearly in defendant's favor that they entitled her to a directed verdict. We are unable to so read the evidence.

█ The trial court held that it was the duty of the plaintiff to stop when she saw defendant's car coming; but according to plaintiff's testimony, she had gained the intersection and was crossing when she first discovered that defendant's car was bearing down upon her. Plaintiff speeded up to make the passage, but was unsuccessful. According to her testimony, it is possible that if she had attempted to stop in the middle of the intersection her car might have suffered a worse blow than it actually sustained. Plaintiff says she tried to get farther

away from the oncoming car. Sometimes it may be regarded as more prudent to run away from another car driven recklessly, or at high speed, than to stop and court certain disaster. This thought was apparently in plaintiff's mind. "A party suddenly realizing that he is in danger from the negligence of another is not to be charged with contributory negligence for every error of judgment when practically instantaneous action is required." *Arps v. Denver, supra,* at page 200 of the opinion, and cases there cited. Objections to the judge fixing in his own mind a "standard of ordinary prudence," and making his own opinion a "definite rule of law" are also discussed in the Arps case.

██ The rule that an automobile driver on the left should yield the right of way to the one on the right does not carry with it a license for excessive speed or reckless driving on the part of anyone. Drivers on the right are as amenable to the law as those on the left; the rule is one of safety and to facilitate traffic; it is promulgated for the use of the traveling public, not for abuse. The rule does not deprive others of *their* rights to the use of public highways. In *Boyd v. Close,* 82 Colo. 150, 153-4, 257 Pac. 1079, we repudiated the notion that there is such a thing as an *unlawful* right of way, and we have not changed our minds.

We do not understand that the trial court consciously misinterpreted the salutary traffic rules announced in the above cases, but we think it misconceived their purport. *Sprague v. Herbel, supra,* was announced after the present case was tried, but it is in harmony with our former decisions and follows them. Nothing here said is intended to prejudge the cause on its merits, in advance of its submission to the jury. Jurors, as fully as judges at nisi or justices of a court review, are constitutional officers with delegated powers and their several functions should be jealously regarded. We conclude that the directed verdict was improper.

The judgment is accordingly reversed and the cause

remanded for further proceedings in accordance herewith.

Mr. Justice Hilliard and Mr. Justice Alter concur.