No. 13,119.

ROSS v. SHERMAN ET AL.

(35 P. [2d] 1014)

Decided September 10, 1934.

Messrs. PERSHING, NYE, TALLMADGE, BOSWORTH & DICK, Mr. JOHN PERSHING, Mr. CLYDE C. DAWSON, JR., for plaintiff in error.

Mr. EDGAR MCCOMB, Mr. MILTON D. GREEN, Mr. WALTER E. SCHWED, for defendants in error.

*In Department.*

Mr. Justice Hilliard delivered the opinion of the court.

Action for damages. Defendants are husband and wife. Plaintiff, a pedestrian, alleged he was injured by an automobile, owned by the husband, driven and negligently operated by the wife. Defendants, claiming no diversity of responsibility, denied negligence, and pleaded want of care on part of plaintiff, contributory negligence and unavoidable accident. Plaintiff replied in denial, and pleaded the "last clear chance" doctrine. At close of plaintiff's case, nonsuit was granted and judgment of dismissal followed. Error is assigned.

The occurrence was at the intersection of Fourteenth avenue and Steele street, Denver. Plaintiff was crossing the avenue, to the north, and the car was proceeding westerly, on the avenue. Only Mrs. Sherman and plaintiff testified of the immediate happenings, the former under statutory cross-examination. Both parties predicate the virtue of their positions on what these two said. We quote their stories in order. Mrs. Sherman: "I was going west on Fourteenth avenue during the noon hour of this bright February day, and just about as I reached the alley I saw Mr. Ross step off the curbing so I slowed up my car as I came along. Just before the intersection I realized that he didn't know that I was on the street, and I honked just once, because I didn't want to startle this gentleman, I knew he was in the street without looking in either direction and I was afraid I might startle him. Just before the intersection I honked once. Mr. Ross looked in the opposite direction first, he looked to the left, and there was a car down there, I imagine it was at the alley or beyond, at least that far away from him; then he looked in my direction and saw me in the intersection, and as I honked I came almost to a dead stop,—I didn't come to a dead stop, I slowed down I should imagine to what would be five miles an hour at

the intersection. I was in the middle of the intersection, and when he saw me he became very much confused and he went forward and back and forward and back, and I came to a standstill as he stepped back, and I assumed that he had made up his mind that he would stay where he was. I turned my car to swing around him and give him a distance to go by me. I proceeded and as I did so he gave a couple of steps and stepped in front of the car and I hit him with the right fender. I didn't realize it, there wasn't sufficient jar of the car for me to know that I had actually hit him. As I looked back I could see him lying there and that is why I did not probably come to a stop immediately, because I did not realize I hit him, and so I looked back and saw him lying in the street and I stopped immediately." Plaintiff: "I was on the way to Colfax and I got part way across Fourteenth, several cars passed me, and I saw this car coming and I don't know, it was quite a ways up Fourteenth, and when she got down near the intersection of the street she stopped, or at least I thought she did, and that is when I started across and then it seemed to me she came faster than ever. Before I got across she hit me."

The problem may be said to be simple. Analysis should make it clear. The early maneuvering of the actors, so much stressed in argument, is mainly void of importance. It all took place before the time when they were at a standstill, and out of which nothing untoward eventuated. When the parties were near the point where should both proceed plaintiff would likely be struck by the car, they stopped. Naturally, both wished to get on. They surveyed the situation. Each contemplated the probable further action of the other. Mrs. Sherman says she concluded plaintiff would stay where he was, but added that she turned her car to go around him that he might go by her. Plaintiff says that since the car had seemingly stopped, he started across. She says he stepped in front of the car, and he says the car came faster than ever. It seems to be conceded that, from ease, Mrs. Sher-

man started the car, swerving from true course. For plaintiff the insistence is that the car was swung to the left, as if.to go behind him, while defendants maintain that the swing was to the right, so as to give him room to proceed. We do not think either position is demonstratively true. The setting is that plaintiff was on Mrs. Sherman's left, and she on his right. She says she turned the car that he might go by her, not that she should go by him. Considering the parties were traveling at right angles, it is plausible to think that the one to go "by" would pass in front of the other, the logic here being that the driver must have turned to the left. The thought may be said to be fortified in the fact that plaintiff was struck with the right fender, not to be expected if the angle of the car's movement was to the right. But, assuming the car bore to the right, as defendant's counsel contend, on what hypothesis assuredly free of the driver's lack of care can the result be explained? The automobile was at rest and near the quiescent pedestrian. The driver was fully cognizant of plaintiff's danger. Only his safety, whatever either did, could be the concern of the moment. Neither the car nor driver could be endangered by any act of plaintiff. How better than pausing briefly could Mrs. Sherman have consummated her expressed wish to afford the pedestrian fair opportunity to get by? Why should she not have so purposed in any event? A moment's wait would have sufficed. With no damage done, the parties had come out of a state of motion and bewilderment into one of quiet and apprehension. In proceeding at once, the premises considered, was the driver exercising due care? Since reasonably, and with understanding, as we think, the fact finding arm of the court might have concluded Mrs. Sherman held the issue in her keep, we cannot go along with the trial court in its observation that "the jury would have to go into the realms of conjecture in order to find * * * this defendant did not exercise all due care." Whether the driver exercised due care was for the jury to resolve. See *Arps v. Denver;* 82

Colo. 189, 257 Pac. 1094; *Kracaw v. Micheletti,* 85 Colo. 384, 276 Pac. 333; *Sprague v. Herbel,* 90 Colo. 134, 6 P. (2d) 930; *Berkowitz v. Barry,* 90 Colo. 170, 7 P. (2d) 405; *Stocker v. Newcomb,* 91 Colo. 479, 15 P. (2d) 975; 20 R. C. L. 26, §18. In granting nonsuit the court erred.

▍ Plaintiff complains that the court erroneously rejected certain X-ray plates offered in evidence, purporting to show his condition immediately after the accident and which were exposed and developed at the Denver General Hospital. We are unable to agree that the witnesses through whom the identity was established, possessed the requisite preliminary knowledge of necessary facts. Considering the showing, the note in 75 A. L. R. 378, called to our attention, is not helpful. The ruling of the court on this point has our approval.

Let the judgment be reversed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.