## MERBACK v. BLANCHARD ET AL.

(No. 2151; January 21, 1941; 109 Pac. (2d) 49)

For prior opinion, see 105 Pac. (2d) 272.

In support of the petition there was a brief by *M. A. Kline*, of Cheyenne, Wyoming.

KIMBALL, Justice.

Defendants have filed a petition for rehearing accompanied by a supporting brief of fifty pages. Former opinion, 105 P. (2d) 272. The brief at the outset informs us that the writers of it were present at the

trial and are firmly convinced not only that there was no substantial evidence to substantiate the charges of negligence set forth in plaintiff's petition, but also that the evidence establishes beyond a reasonable doubt that the plaintiff's intestate was guilty of contributory negligence; therefore, they believe that the members of the court must have been either consciously or unconsciously influenced in their decision by sympathy for plaintiff and her infant son or by other matters outside of the record, or that they may have misunderstood portions of the testimony and failed to give proper weight thereto. If we undertake to put this in the form of a syllogism, we find that counsel have left it incomplete by modestly refraining from stating a valid major premise to support the conclusion.

The petition for rehearing alleges generally that the court erred in holding that questions of negligence and contributory negligence should have been submitted to the jury. On the sufficiency of the evidence to go to the jury on the question of defendants' negligence, we think the case requires no further discussion.

In contending that the evidence established that the deceased was guilty of contributory negligence as a matter of law, counsel assert that the court made statements of fact not supported by the evidence, and it is principally for the purpose of showing the grounds for such statements that we add the following to amplify the discussion in our former opinion.

We understand that counsel take no exception to our holding that a driver of an automobile who collides with an obstruction on the highway should not be held negligent as a matter of law if there is evidence from which the jury may find that there were what we called "disconcerting circumstances" affecting his action at the time of the collision. It is contended, however, that there was in this case no evidence of such circum-

stances, and it is in this connection that it is asserted that we misunderstood portions of the evidence.

The first of the circumstances mentioned in our former opinion was the color of the defendants' truck and of the road on which it stood. The road was oil-surfaced, and the truck had been used for some time in hauling road oil. Our former opinion contains the statement that the "semi-trailer and tank of defendants' truck were black and soiled with black road oil." Counsel say there was no evidence to show this. The abstract of the evidence shows that defendant Blanchard testified that "the front part of the truck was red, the semi or oil tank was black." Another witness, according to the abstract, testified that "the front part of the Blanchard truck was of dark color and the tank was soiled with oil." In plaintiff's brief and oral argument it was stated that the tank was covered with road oil. These statements in the abstract, brief and oral argument were not challenged by defendants' counsel until the petition for rehearing was filed. It is now contended that the statements in the abstract do not accurately reproduce the testimony of the witnesses on this point. In the circumstances we think the fact stated in our opinion was virtually admitted. We may now add that the photographs taken shortly after the collision indicate that the rear of the tank on the defendants' truck was substantially the same color as the road. The photographs indicate that the rear parts of the trailer below and supporting the tank were even darker in color than the tank itself, but this is probably explained by testimony that the black oil ran out of the tank onto the parts below through a pipe or valve opened by the collision.

Another circumstance mentioned in our former opinion was the glare of the lights of Russell's truck approaching from the other direction. The theory was

that if Thomas was blinded by those lights, the deceased, who, according to the testimony of Thomas and Russell, was very close behind Thomas, may also have been blinded or confused by the same lights. We stated that witness Thomas gave testimony "that the jury may have understood as meaning that he was blinded by the lights from Russell's truck." Counsel say that "the witness' testimony will not support any such interpretation," and quote from the record two statements made by the witness in explaining why, at the time he stopped, he did not see the lights of the Merback truck. The first: "Turning the truck toward the edge of the road would blind your light coming and the lights the other way too." The second: "I didn't see his lights, no. These other lights coming to me kind of shut the lights off in the rear." Counsel say there is no other evidence in the record upon this point. There is, however, a third statement of the same witness which counsel have evidently forgotten: "I was turning from the center of the road and was blinded by the flare of the lights, and any other lights would do that too." Some of this testimony might have been given in clearer language, but no discussion is necessary to justify our statement that the jury may have understood that the witness meant that he was blinded by Russell's lights, the only lights that could have had that effect.

A third circumstance was the dimming of the rear warning lights on defendants' truck before the deceased ran into it. We assumed that the jury might have believed that those lights continued to burn dimly until they were extinguished by the collision. This was not shown by direct evidence, but defendants argue that it should be inferred from testimony that the front lights, on the same circuit, were burning dimly even after the collision. Thomas testified that the last dimming of his front lights occurred while he was

traveling 100 or 150 feet just before the collision, and the inference most favorable to defendants is that the rear warning lights became correspondingly dim at the same time. We said in our former opinion that the deceased, watching the lights and seeing them grow dim, might have been deceived as to the distance between them and him. We do not suppose that the court is better qualified than a jury to estimate the importance of this circumstance which, as we recall, did not appear in any other case brought to our attention. It cannot be dismissed from consideration on the theory advanced by counsel, that if the lights were burning at all, their dimness was immaterial. It is a matter of common knowledge that it is difficult at night to judge accurately as to the movement and location of a light in the observer's line of travel. Henavie v. New York etc. R. Co., 166 N. Y. 280, 285, 59 N. E. 901; Chicago etc. R. Co. v. Chambers, 68 Fed. 148, 152; Jensen v. Culbert, 134 Wash. 599, 603, 236 P. 101; Caylor v. B. C. Motor Transp., 191 Wash. 365, 71 P. (2d) 162, 167. We think the difficulty is greater if the light becomes dim from a cause unknown to the observer. The testimony to which we have referred was relevant as tending to show conditions affecting visibility at the time and place of the collision, and should have been considered by the jury in connection with other evidence pertinent on the issue of the contributory negligence of an actor who was prevented by death from giving an explanation of his conduct. Counsel seem to be of opinion that the testimony had no probative value in the absence of direct testimony that Merback's vision was made inaccurate or uncertain by the surrounding conditions. We cannot concur in this view. It seems to fail to appreciate the importance of circumstantial evidence in cases of this kind where the defendant has the burden of proof and the injured person cannot testify. Cited cases, Wright v. Conway,

34 Wyo. 1, 51, 241 P. 369, 242 P. 1107 and Harris v. Schoonmaker, 50 Wyo. 119, 151, 58 P. (2d) 415, 60 P. (2d) 360, holding that a finding in favor of the party who has the burden of proof cannot rest on a mere guess or conjecture, are not particularly helpful. It has been held that due care of the person who suffers a fatal injury need not be shown by direct evidence, even when the plaintiff has the burden of proof on the issue. See Noble v. New York etc. R. Co., 20 App. Div. 40, 46 N. Y. Supp. 645; Chicago etc. R. Co. v. Beaver, 199 Ill. 34, 65 N. E. 144. In Braun v. Buffalo Gen'l. Elec. Co., 200 N. Y. 484, 496, 94 N. W. 206 it was said that "where the injured person is dead wider latitude should be allowed to the jury in passing on the question of contributory negligence," and in Stump v. Burns, 219 N. Y. 306, 310, 114 N. E. 346, that in an action to recover damages for death negligently caused, in the absence of direct proof of the acts of the intestate immediately before the injury, "the relevant conditions and circumstances surrounding and relating to the occurrence may be submitted to the jury, in the absence of such direct proof, in order that the jury may determine the inferences, if any, which they create."

In New York, since the burden of proof in such cases was cast on defendant, it is held that "if any possible hypothesis based on the evidence forbids the imputation of fault to the deceased, as a matter of law, the question is for the jury." Chamberlain v. Lehigh Valley R. Co., 238 N. Y. 233, 144 N. E. 152. In Nicholson v. Greeley Square Hotel Co., 227 N. Y. 345, 125 N. E. 541, a verdict for a deceased workman's administratrix was reversed by the Appellate Division on the ground that the workman was guilty of contributory negligence as a matter of law. He had been working in one of several elevator shafts, and was killed by an elevator descending in the adjoining shaft. The question was whether he was negligent in getting in the path of the

descending car in the adjoining shaft, and it may be assumed that the Appellate Division was of opinion that the workman must have known that the elevator was going up and down in the adjoining shaft and should have known that he would be injured if he got in its path. The Court of Appeals, in an opinion by Judge Cardozo said that to hold with the Appellate Division would be to ignore the statute changing the burden of proof on the issue of contributory negligence in death cases. It was said: "He may have slipped or stumbled or lost his balance. If none of these things befell him, he may have miscalculated the distance in crouching down or bending forward to his work, or again in rising from it. . . He may have relaxed his vigilance a brief second, his mind absorbed in an engrossing task. . . Any one of these and other possible hypotheses would forbid the imputation, as a matter of law, of contributory negligence. At most, the question was for the jury." Of course, there was no direct evidence in proof of the suggested possibilities. See, also, Mercier v. Union St. Co., 230 Mass. 397, 119 N. E. 764; Barstow v. City of Berlin, 34 Wis. 357, 362; Brinkerhoff v. Pennsylvania R. Co., 245 App. Div. 561, 283 N. Y. Supp. 109, aff'd. 10 N. E. (2d) 584.

It has been said that "there is need for caution in framing standards of behavior that amount to rules of law." Pokora v. Wabash Ry. Co., 292 U. S. 98, 105. We may concede that the rule of law, as sometimes declared, that the driver of an automobile is negligent if at night he runs into an obstruction on the highway within the range of his lights, has been a sufficient basis for directed verdicts in cases where evidence which the jury would have been bound to believe proved that the driver must have seen the obstruction if he had been keeping a proper lookout. It has been held that the duty to look includes the duty to see objects in plain sight. See Galicich v. Oregon Short Line R.

294

Co., 54 Wyo. 123, 146, 87 P. (2d) 27. We think however that, in this case, testimony tending to show conditions which the jury may have believed would commonly affect the vision and judgment of a driver at night, left the issue one of fact.

The petition for rehearing will be denied.

RINER, Ch. J., and BLUME, J., concur in denying a rehearing, but BLUME, J., adheres to his opinion on the merits, as heretofore expressed.