**PILAND v. MARYLAND CASUALTY CO.**
Civ. A. No. 2043.

United States District Court
E. D. Louisiana. New Orleans Division.
July 13, 1949.

Gordon Boswell, New Orleans, La., Stanley E. Loeb, New Orleans, La., for plaintiff.

Rosen, Kammer, Wolff, Hopkins & Burke, New Orleans, La., Alfred C. Kammer, New Orleans, La., for defendant.

CHRISTENBERRY, District Judge.

This is an action against the insurer of one Wilbur J. Melancon, for damages resulting from an accident in which plaintiff ran an automobile which he was driving into the rear of a cane truck and semi-trailer owned by Melancon.

In his complaint plaintiff alleges that the accident occurred on November 29, 1946, at approximately 5:45 P.M., well after dark; that the insured's truck and semi-trailer were parked in the traffic lane being traversed by the plaintiff without any lights visible from the rear, and that there were no flares or other warning devices displayed near said parked truck and semi-trailer to warn plaintiff of their presence on the highway. Plaintiff alleges further that his vision was impaired, and that he was momentarily blinded by the glare of headlights of motor vehicles travelling toward him on the highway, which prevented his seeing the truck and semi-trailer parked on the highway until he was too close thereto to avoid colliding with the rear end of the semi-trailer. Defendant denies that its insured was negligent, and, in the alternative, pleads plaintiff's contributory negligence. The case was tried to a jury. At the close of all of the evidence defendant moved the Court to direct a verdict in its favor, and the Court reserved its ruling on the motion. The jury found for the plaintiff in the sum

of $7,500.00, and the matter is now before the Court on defendant's motion to set aside the verdict and to enter judgment in accordance with its motion for a directed verdict, and, in the alternative, to set aside the verdict and grant a new trial.

Briefly, the evidence in the case is as follows: In the late afternoon, the exact time being in dispute, of November 29, 1946, a cane truck and trailer owned by Melancon, travelling south or toward Raceland, Louisiana, on Louisiana Highway 29, came to a stop on the highway because of the presence of a peddler's truck which had stopped on and blocked a portion of the southbound traffic lane of the highway. Shortly thereafter, a second cane truck and trailer owned by Melancon, which was following the first truck and trailer, came into slight collision with the first cane truck and trailer. The driver of the second vehicle, one Davis Foret, immediately dismounted, proceeded to the front end of his truck, and, upon examination, discovered that one of its headlights had been damaged. The first truck sustained no damage, and soon after the collision proceeded on its way. The driver of the second truck testified that after removing the damaged headlight he returned to the cab of his vehicle, believing that he, too, would be able to proceed, but that when he tried to start the motor he discovered it would not start. He testified that as soon as he found that his motor would not start, he began to get out his flares preparatory to placing them on the highway, but that while so engaged his vehicle was struck in the rear by the automobile driven by plaintiff.

Plaintiff testified that shortly before the accident he was travelling at about 50 miles per hour; that when some distance from the parked truck and trailer, with which he subsequently collided, an ambulance approached him, going in the opposite direction; that this ambulance crossed in front of him into a church yard, and that to permit it to do so he reduced his speed to 35 or 40 miles per hour. He testified that the road between the point at which the ambulance turned off and the point at which the truck and trailer were parked was straight, but that there was a slight curve to the right, about a quarter of a mile beyond the parked truck and trailer; and that no cars coming from the opposite direction passed him between the time that he met the ambulance and the time that he struck the trailer. He testified further that soon after the ambulance pulled off the highway, and when he was about 250 feet from the parked truck, he was blinded by the headlights of approaching automobiles; that while so blinded he continued on his course and did not see the parked truck and trailer in his path until he was about 25 or 30 feet from them, too late to avoid colliding with the rear end of the trailer.

We shall first consider the state highway regulatory statutes pertinent to the issues here. Act No. 286 of 1938, Par. 3, Rule 15, makes it unlawful to park or leave standing any vehicle upon a paved or improved or main travelled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main travelled portion of such highway. The statute provides further that if any vehicle is left parked at any time one-half hour after sunset or one-half hour before sunrise, the person in charge of the vehicle must display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence on the highway.

An exception to the provisions of this rule is made with respect to the driver of any vehicle which is disabled on the highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle on the highway. But in such case the law makes it the duty of the owner or driver of such vehicle to remove the same as soon as possible, and until removed to protect traffic from same at his responsibility. The duty imposed to protect traffic at his responsibility does not, however, make the owner or driver the insurer of other persons using the highway. Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So.2d 720.

As to motor vehicles stopped upon the highway at any time during the period of from one-half hour after sunset to one-half hour before sunrise, Act No. 164 of

1936, as amended by Act No. 215 of 1942, makes it the duty of the operator of such a vehicle to place lighted flares approximately 100 feet to the front and rear of such vehicle, and a lighted flare at the side of such vehicle, on the center line of the highway. Act 286 of 1938 provides for lighted front and rear lamps for every vehicle operated on the highway during the period one-half hour after sunset and one-half hour before sunrise, or at any other time when there is not sufficient light to render clearly discernable any persons on the highway for a distance of 200 feet ahead, and for certain clearance lights on trucks and trailers.

As has been stated, there was considerable conflict in the testimony as to the time of the accident. It was stipulated by the parties that the sun set on the day in question at 5:02 P.M. The duty of the truck driver to place flares would not, therefore, arise until 5:32 P.M., and the duty as to both parties to the accident to have their vehicles lighted would not arise until that time, or until such time as there was not sufficient light to render clearly discernable a person on the highway for a distance of 200 feet. A number of witnesses who, to the Court, appeared to be entirely disinterested, placed the time in the neighborhood of 5:15 P.M. The plaintiff and one of his witnesses fixed the time at about 5:45 P.M. This conflict of testimony presented a question of fact for the jury. If the jury concluded, as it apparently did, that the accident happened at the time fixed by the plaintiff, the statutes concerning the placing of flares and the lighting of the vehicles came into play. That the cane truck and trailer had a rear light, clearance lights and headlights there seems to be little doubt, from the evidence. Plaintiff's own witness, one Lloyd Templet, testified that after the accident, when he stood at a distance of as much as 100 feet from the rear of the trailer, he could see a taillight still burning. He stated that because of the position of the light and the construction of the trailer he could not see this light when standing closer than approximately 100 feet from the truck. There was ample evidence that the clearance light on the left side of the truck and one headlight on the truck were also burning after the accident. Additionally, several witnesses, including Templet, testified to seeing the broken parts of another rear light on the highway under the truck after the accident.

With respect to the negligence of the driver of the cane truck, the question therefore would seem to boil down to whether or not he was negligent in delaying to set out his flares. While the law makes it mandatory for the operator of a motor truck to set out his flares immediately upon bringing his vehicle to a stop, this provision must be given a reasonable interpretation. Manifestly, not every stopping on the highway necessitates the placing of flares. Where such stopping may reasonably be expected to be only momentary, the time consumed in getting out, placing and lighting flares might well increase the hazard, instead of avoiding it.

However, assuming that there was evidence supporting findings by the jury that the employee of defendant's insured was negligent, and that such negligence was a proximate cause of the accident, yet the record clearly speaks plaintiff's contributory negligence as a proximate cause of the accident.

It is well settled in Louisiana "that a motorist is held to have seen an object, which, by the use of ordinary care and prudence, he should have seen in time to avoid running into it, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he could stop within the range of his vision." See Louisiana Power and Light Company v. Saia, 188 La. 358, 177 So. 238, 239, and cases there cited. See, also, Shell Oil Company v. Slade, 5 Cir., 1943, 133 F.2d 518. It is equally well settled that even if an obstruction or another vehicle in the road ahead is not lighted, it is ordinarily considered negligence for a driver so to operate his vehicle that he can not avoid striking the obstruction or other vehicle. See Boland Mach. & Mfg. Co. v. Highway Underwriters, La.App., 22 So.2d 307, 310.

There is an exception to the general rule stated above, where there are such unusual circumstances that the failure of the on-coming driver to see may be excused, for example where the vision of the driver is impaired suddenly and without warning. It seems doubtful from the evidence that plaintiff was blinded by the lights of approaching automobiles, but viewing the testimony in the light most favorable to him, and assuming that he was blinded, was such blinding of that emergent character which would excuse his failure to see the truck and trailer parked on the highway? I think it clear from the evidence that it was not.

By his own testimony, plaintiff travelled some 220 feet while blinded. Immediately that condition arose, he was under the duty so to reduce the speed of his vehicle as to enable him completely to bring his car under control. This he obviously failed to do. Doubt that plaintiff was, as he contends, blinded by the headlights of approaching automobiles is raised by the testimony of his own witness, one Lloyd Templet. Templet testified that he was travelling on the highway on which the accident occurred, in the opposite direction from that travelled by plaintiff; that when he had reached a point a city block before the scene of the accident, he parked his automobile on the shoulder of the road to await the merchandise truck; that he crossed the road, intending to make a purchase from the truck when it reached him; that after doing so, he saw the first cane truck pull up, and a short while later, the second cane truck; that when the second truck arrived he heard, as he describes it, a little crash; that he thought the merchandise truck had been struck, and re-crossed the road to get into his car; that as he went to get into his car he heard the second crash which was that of plaintiff's car colliding with the rear of the second cane truck.

With uncontradicted testimony of Templet's crossing the highway on foot immediately before the accident occurred, the question naturally arises as to where the automobiles were which plaintiff alleges were approaching, and which blinded him before the crash, keeping in mind that by his own testimony no approaching automobiles were between the parked truck and plaintiff's automobile from the time that he first became blinded and the moment that he struck the truck. Plaintiff has failed to show the presence of such unusual circumstances and conditions as would excuse him from failing to see the parked vehicle. He is guilty of contributory negligence, as a matter of law, and is not entitled to recover for his injuries. The defendant's motion to set aside the verdict entered on June 28, 1949, in plaintiff's favor, and to enter judgment in accordance with its motion for a directed verdict must be, and is, granted.