## No. 16,572.

### SEWARD *v.* YORK.
(239 P. [2d] 301)

Decided December 3, 1951.

Messrs. WOOD & RIS, for plaintiff in error.

Mr. John F. Mueller, Mr. Gregory A. Mueller, for defendant in error.

*In Department.*

Mr. Justice Clark delivered the opinion of the court.

Reference will be made to the parties herein as they appeared in the trial court, wherein defendant in error was plaintiff and plaintiff in error was defendant.

This is an automobile-pedestrian traffic case wherein plaintiff brought action to recover damages for the death of his minor daughter as the result, as plaintiff alleges, of the negligence of the defendant. Plaintiff's daughter, Beverly York, to whom we will hereinafter refer as decedent, at the time of her death was slightly less than 16 years and 10 months of age. Her fatal injury was incurred on June 10, 1949, and death resulted on the 16th of that month. Trial to a jury resulted in a verdict favorable to plaintiff, and judgment was entered by the trial court in accordance therewith. Defendant brings the matter here for review by writ of error.

Some time before 7:00 o'clock in the morning of June 10, 1949, decedent boarded a south-bound tramway bus and proceeded southerly on York Street to the bus stop north of the intersection of York Street and East 17th Avenue, where she descended from the bus through the door towards the rear, hurried around the front end of the bus, proceeded diagonally into a marked crosswalk extending easterly across York Street to catch a west-bound bus then stopped on 17th Avenue east of York Street, that she might proceed to St. Joseph's Hospital where she was employed as a nurse's aid. At a point approximately 13½ feet easterly from the west curb of York Street, within the marked crosswalk, and approximately 27 feet north of the north curb line of East 17th Avenue, as it extends easterly from York Street, decedent was struck by the right front of defendant's auto-

mobile, which was then being driven by defendant proceeding southerly on York Street. As a result of this collision defendant was violently hurled to the pavement at a distance of about 15 feet from the point of impact, and rendered unconscious, from which condition she never recovered.

To the extent as above stated there is neither dispute nor controversy as to the facts. The defendant, by way of defense, pleads denial of negligence on his part and affirmatively alleges as further defenses, contributory negligence, unavoidable accident, and assumption of risk. While defendant sets forth 16 separate items in his specification of points, these all may be considered under, (1) alleged error of the trial court in refusing to direct a verdict in favor of defendant upon the ground that the evidence shows, as a matter of law, that defendant was not guilty of negligence, or that the deceased was guilty of contributory negligence, or that the accident was unavoidable; (2) the giving of instructions 9 and 10; (3) the refusal to give certain instructions tendered on behalf of defendant; and (4) error in amendment of the judgment, upon plaintiff's motion, so as to increase the amount thereof by adding interest from the date of the commencement of the action.

The most serious contentions revolve around the matters included within the first group, and concern the refusal of the trial court to take the case from the jury and determine the issues in favor of defendant as a matter of law for one or more of the reasons above stated. The difficulty in solving this problem arises from the unusual situation prevailing at the intersection of York Street and East 17th Avenue at the time of the occurrence of the fateful event. At the York Street intersection, East 17th Avenue offsets so that a motor vehicle, such as the tramway bus, moving in a westerly direction from said 17th Avenue east of York Street, must necessarily turn left and proceed a distance southerly for nearly half a block on York Street to reach the point

where it might then continue westward on East 17th Avenue. To handle motor traffic at this difficult intersection a series of traffic lights had been installed approximately two weeks before the events herein narrated occurred. Without use of a plat it is difficult to find words to express clearly the situation with respect to traffic lights at this intersection. There were, however, the following traffic lights: One on the corner at the south of 17th Avenue and west of York Street at the point where 17th Avenue enters York Street from the west, and one on the east side of York Street directly opposite the center of 17th Avenue as it approaches that street. These two signals are of no further importance in this case other than possibly to show the sequence of the entire series. A standard is located on the west side of York Street opposite the center of East 17th Avenue where it proceeds easterly from the offset on York Street, to which we will refer as Standard 1. A fourth standard is on the corner nearest City Park to the east of York Street and north of 17th Avenue, and which, for present purposes, will be designated as Standard 2.

The marked crosswalk on which decedent was struck, as hereinabove stated, lies north of all of these lights.

The south line of the marked crosswalk lies north from the curb line of East 17th Avenue, a distance somewhat in excess of 14th feet. The number 2 signal standard is located at a point about midway between the south line of the crosswalk and the north curb line of 17th Avenue. From the north curb line of 17th Avenue extended westerly across York Street, the number 1 standard lies southerly a distance of $22\frac{1}{2}$ feet, making it somewhat in excess of $36\frac{1}{2}$ feet south of the south line of the marked crosswalk.

On the number 1 standard there were three lights, two for traffic control north and south on York Street, and one facing easterly for traffic control on 17th Avenue entering York Street from the east. Likewise on Standard No. 2 were three signal lights: two north and

south for traffic control on York Street, and one facing east for traffic control on 17th Avenue from the east. There was no light on this standard, nor in any other locality, for control or guidance of pedestrians desiring to cross at the marked crosswalk from the west to the east side of York Street, which was the course being pursued by decedent at the time of the accident.

On behalf of defendant it is contended by his counsel that the court should have determined as a matter of law that he was not guilty of negligence. He asserts that as he approached the intersection, the bus stopping at the curb obstructed his view of the north light on Standard No. 1; that when he last saw it, it was green. He further declares that when his view of the light became obstructed by the bus, he glanced to the light on the opposite side of the street, which would be the north light on Standard No. 2, which likewise was green. He does not undertake to say definitely, however, that these lights were green or even amber at the moment his car struck decedent, and only that they were green when he last looked. Defendant's testimony in this respect is corroborated by that of his wife. The bus driver testified that the light facing him on Standard No. 1 was amber, when last he saw it as the girl was at the right front corner of the bus; and another witness, who was some 200 feet distant north, testified positively that these lights were green as he and defendant, both travelling in the same direction, approached the intersection; that they turned to amber and that at the moment of impact that they were red. There is further evidence in the record that the windshield of defendant's car was dirty and that his brakes were in such condition that they would not effectively operate in a time of emergency. There is further evidence that after the impact with decedent, defendant's car travelled a distance of 77 feet before it stopped. This, in our opinion, furnishes ample conflict in the evidence to justify the submission of the case to the jury, and to sustain an adverse verdict of

the jury, if such was returned, and, as in the present instance, resulted.

What we have said in the last foregoing paragraph also applies to a considerable extent with respect to the contention on behalf of defendant that the court should, as a matter of law, have directed a verdict in favor of defendant because of contributory negligence on the part of decedent. In this connection it is further contended, however, that even granting defendant's negligence, decedent was guilty of such negligence that it should be said as a matter of law that defendant should not be held liable. It is called to our attention that the timing and sequence of the traffic lights was such, that even though southbound vehicular traffic on York Street would be blocked by red lights, northbound traffic on the same street would not be so blocked, the light regulating said northbound traffic on the east half of York Street being timed so as to let such traffic through for a longer period of time than southbound on the opposite side of the street. It is said that decedent was negligent in that she did not take that situation into consideration before undertaking to cross to the east side of York Street. This point is without merit for the simple reason that decedent was not struck by a northerly moving vehicle. It further is asserted that decedent, at the moment she was struck, was actually travelling against the traffic signal, since the signal on the opposite side of standard 2 facing east was, according to its timing and sequence, then red, and that the pedestrian had no right to cross until that signal should turn green. It will be remembered that there was no signal on the west side of the Standard 2 by which the movement of pedestrians might be directed. It would be preposterous to require a pedestrian to go to the east side to observe the light on that side of Standard 2 in order to determine whether or not he might safely cross York Street with the signal from west to east. Under such requirement no pedestrian would dare, or could legally use, the crosswalk to travel eastward. It should be borne in mind also that

crossing east was necessary for bus passengers to make transfer to the west-bound bus at this point.

■ There is only one point on which it might be said that decedent was contributorily negligent, and that is the contention to the effect that she did not stop, look both ways and ascertain that there was no danger before starting to cross the street. No one saw her stop, no one saw her look, but there is no one who can say that as she approached that intersection on the bus, alighted therefrom, and started around its front end, that she did not see the traffic light change from green to amber and to red, and in reliance thereon, felt safe in crossing the street in the protection of the light designed to stop vehicular traffic at least on the west half of that street. This, too, was a question not for the court to determine as a matter of law, but for submission to the jury as the finder of facts, from all the evidence in the case. "We have repeatedly held that where facts are disputed or inferences therefrom are reasonably disputable, the question is one for the jury." *Sprague v. Herbel,* 90 Colo. 134, 140, 6 P. (2d) 930, citing many cases. Following the Sprague case, see, also, *Berkowitz v. Barry,* 90 Colo. 170, 7 P. (2d) 405; *Ross v. Sherman,* 95 Colo. 346, 35 P. (2d) 1014.

■ We quote the following well-established rule from another auto-pedestrian case: "* * * the court may find negligence or contributory negligence as a matter of law only when the circumstances and what the parties did are so clearly established by the evidence that reasonable men cannot differ, first, as to what the circumstances and the acts of the parties were, and, second, that such acts under the circumstances were negligent." *Publix Cab Co. v. Phillips,* 98 Colo. 542, 548, 58 P. (2d) 486. "It is settled in this state, that it is only in the clearest of cases, when the facts are undisputed, and it is plain that all intelligent men can draw but one inference from them, that the question of ordinary care is ever one of law for the court." *Stocker v. Newcomb,* 91 Colo. 479, 484, 15 P. (2d) 975. To the same

effect also, is *Swanson v. Martin,* 120 Colo. 361, 365, 209 P. (2d) 917.

In the case of *Pueblo Transportation Co. v. Moylan,* 123 Colo. 207, 226 P. (2d) 806, we said, quoting from 5 American Jurisprudence, page 758, section 448: "The law does not view a pedestrian as contributorily negligent because he has not looked a certain number of times before crossing a street or highway * * * and a pedestrian who is lawfully crossing a public thoroughfare need not be constantly looking or listening to ascertain if automobiles are approaching, under the penalty that if he fails to do so and is injured, his failure conclusively charges him with negligence. * * * He is required to use such care as a reasonably prudent person would use in like situation, and what constitutes such care is normally a question of fact for the jury."

In the case of *Crosby v. Canino,* 84 Colo. 225, 233, 268 Pac. 1021, we find this statement: "In the absence of reasonable grounds to think otherwise, the plaintiff had a right to assume that she would not be exposed to danger by reason of a violation by another person of such traffic regulation."

In the instant case the evidence being in conflict as to whether or not southbound traffic on York Street, at the moment of the striking of decedent by defendant's automobile, was blocked by red traffic signals, which, if true, would have justified a belief on the part of decedent that drivers of cars would obey the law, the trial court was justified in its refusal to determine the issues as a matter of law.

Defendant objected to the giving of instructions 9 and 10, and now includes these objections in his specification of points.

With respect to instruction No. 9, it is contended that it is erroneous because the court incorporated in the instruction—which pertains to degree of care—the elements of age and experience. In order to determine what is or is not the degree of care or safety used by "an ordinarily

prudent person," the elements of age and experience are always to be taken into consideration. What is "ordinarily prudent" always depends upon many conditions, and a variety of surrounding facts and circumstances. It perhaps might have been as well to have omitted from the instruction reference to age and experience, but their inclusion cannot be said to have been prejudicial to defendant.

At the time of trial there was tendered on behalf of plaintiff an instruction covering the provisions of section 15 (a) of the City Ordinances of the City and County of Denver, which requires an operator of a motor vehicle to yield the right of way to a pedestrian within a marked crosswalk, except where traffic is being regulated by signals. The defendant, on the other hand tendered as an instruction section 16 of the said ordinances, which pertains to intersections where traffic is controlled by signals and provides that pedestrians may cross only on a green or "go" signal. It was vigorously contended on behalf of plaintiff that the crosswalk involved herein, although controlled for vehicles by traffic signals, was not a controlled intersection so far as pedestrian traffic was concerned. On behalf of defendant, however, it was, and is, strongly contended that since the intersection is equipped with traffic signals, section 15 (a) of the ordinance has no application. The trial court refused the instructions tendered by both plaintiff and defendant, substituting one of his own as instruction No. 10, which reads as follows:

"The ordinances of the City and County of Denver in force at the time of the accident provide that all traffic approaching intersections shall stop on the yellow and red light facing them at said intersection. They also provide that all traffic may enter the intersection with the green light facing them.

"These are what are known as controlled intersections. And where intersections are not controlled, as so above defined, a pedestrian in the crosswalk has the right-of-way."

From our preceding remarks it is apparent that at the time of the accident, the situation at the intersection of York Street and East 17th Avenue was peculiar with respect to traffic control signals. It likewise is clearly apparent that signals there recently installed were designed primarily for the control of vehicular traffic and without special consideration of the needs or protection of pedestrians. It is a situation that probably will not arise with any degree of frequency. It is manifest that had the trial court adhered strictly to the provisions of either section of the ordinances, it would have been doing an injustice to one or the other of the parties to this controversy. On the whole, the instruction given by the court is manifestly fair. It is a reasonable construction of the law as applied to the peculiar facts of the presented situation. We can find no basis upon which it may justifiably be condemned, and therefore, determine that it was without prejudice to defendant's rights.

We have considered the several specifications of points raised on behalf of defendant with reference to the refusal of the court to give the instructions tendered by his counsel. What we already have said covers most of the points presented with reference to these matters. In several instances, the rule covered by the instruction tendered was properly presented to the jury by instructions given by the court. Our careful study on all of these refused instructions convinces us that no sufficient error appears on account thereof to justify a reversal of the judgment.

■ Did the trial court err in calculating and including in the judgment interest, from the date of filing of the complaint, on the amount of the damages fixed by the jury in its verdict? We believe not. The applicable statute is section 5, chapter 50, '35 C.S.A., which was fully considered and construed by our Court in *American Insurance Co. v. Naylor*, 103 Colo. 461, 469, 87 P. (2d) 260. It is unnecessary to here add anything to what we said in the opinion in that case.

The judgment is affirmed.

MR. CHIEF JUSTICE JACKSON, MR. JUSTICE STONE and MR. JUSTICE KNAUSS concur.