Helen **ANDERSON** and William M. Anderson, Appellants,

v.

**HUDSPETH PINE, INC.,** Appellee.

No. 6734.

United States Court of Appeals
Tenth Circuit.

Jan. 3, 1962.

876

Martin P. Miller, Denver, Colo. (Robert E. McLean, Denver, Colo., on the brief), for appellants.

Forrest C. O'Dell, Denver, Colo. (Wormwood, O'Dell & Wolvington, Denver, Colo., on the brief), for appellee.

Before PHILLIPS, PICKETT, and HILL, Circuit Judges.

PHILLIPS, Circuit Judge.

William M. Anderson and Helen Anderson, his wife, brought this action against Hudspeth Pine, Inc.[1] to recover damages for personal injuries suffered by them as the result of a collision between an automobile in which they were riding as passengers and being driven by Alex Dietrich and a 1950 GMC tractor and trailer owned by Pine. The Andersons, as grounds for their claims, alleged that the proximate cause of their injuries was the negligence of Pine and Earl E. Potter, its employee and the driver of the truck.

There were two trials of the case. The first resulted in verdicts in favor of the Andersons. The court set aside those verdicts and granted Pine's motion for a new trial on the ground that it had erred in failing to give an instruction requested by Pine. The second trial also resulted in verdicts in favor of the Andersons, but for amounts substantially less than those awarded by the verdicts at the first trial.

Judgments were entered on the verdicts returned at the second trial and the Andersons have appealed.

Counsel for the Andersons contend that the error in the instruction was harmless, because at the first trial, the court, as requested by them, should have directed the jury to return a verdict in their favor on the issue of liability and should have submitted for the determination of the jury only the amounts of damages.

In considering a motion for a directed verdict, the evidence, with all legitimate, reasonable, or proper inferences that may be drawn therefrom[2] is to be viewed and construed in the light most favorable to the party against whom the motion is directed.[3] In passing on the motion, the court may not pass on the weight of the evidence, or determine where the preponderance of the evidence lies.[4] With the exception of clearly incredible evidence, the court should not consider or pass on the credibility of witnesses and should accept as true the evidence in favor of the party against whom the motion is directed.[5]

1. Hereinafter called Pine.

2. Allen v. Pennsylvania R. Co., 7 Cir., 120 F.2d 63, 64; Brinegar v. Green, 8 Cir., 117 F.2d 316, 319; Johnson v. J. H. Yost Lumber Co., 8 Cir., 117 F.2d 53, 59; Gossard v. Watson, 122 Colo. 271, 221 P. 2d 353, 355; 88 C.J.S. Trial § 257f.

3. Little v. Watkins Motor Lines, 8 Cir., 256 F.2d 145, 148; Baltimore & O. R. Co. v. Postom, 85 U.S.App.D.C. 207, 177 F.2d 53, 55; Gossard v. Watson, 122 Colo. 271, 221 P.2d 353, 355; Cadez v. General Casualty Co. of America, 10 Cir., decided Nov. 15, 1961, 298 F.2d 535.

4. MacKay v. Costigan, 7 Cir., 179 F.2d 125, 128; Baltimore & O. R. Co. v. Postom, 85 U.S.App.D.C. 207, 177 F.2d 53, 54; Adams v. United States, 7 Cir., 116 F.2d 199, 200.

5. Whittington v. Mayberry, 10 Cir., 190 F.2d 703, 705; Bailey v. Slentz, 10 Cir., 189 F.2d 406, 407; Danaher v. United States, 8 Cir., 184 F.2d 673, 675; Long v. Clinton Aviation Co., 10 Cir., 180 F. 2d 665, 667; Kravat v. Indemnity Ins. Co., 6 Cir., 152 F.2d 336, 338; Singer v. Chitwood, 126 Colo. 173, 247 P.2d 905, 908; Parrish v. Hainlen, 124 Colo. 229, 236 P.2d 115, 116.

And, if the evidence and inferences therefrom, viewed in the manner stated above, are of such a character that reasonable men in the exercise of fair and impartial judgments may reach different conclusions, the motion should be denied and the issues submitted to the jury.[6]

We have considered the evidence in accordance with the rules stated above and are of the opinion there was credible and substantial evidence from which the jury could have found the following facts:

Potter, the driver of the truck, was in charge thereof at the time of the accident. The trailer was loaded with mill equipment parts, mostly steel, which were being transported by Pine from Prineville, Oregon, to Pagosa Springs, Colorado. The trailer was a flat bed trailer and the top of the load was "low, not high." The combined weight of the load, tractor and trailer was approximately 70,000 pounds. The accident occurred about five miles west of Pagosa Springs on a country road paved with blacktop.

Potter had 20 years of experience as a truck driver. Before leaving Prineville, Potter checked his tires, turn signal lights, headlights, clearance lights, brake lights and reflector lights and found them in good order.

Potter stopped at Bayfield, Colorado, about 40 miles west of Pagosa Springs, and checked his headlights, clearance lights and tires and found them in good order. He also cleaned his reflector lights.

The truck was equipped with three reflector flares. They were strapped on the side, near the rear of the truck. There was also one flame flare, located under the driver's seat. The truck had front and rear turn signal lights. The right turn front signal light and the left turn rear signal light were not working at the time of the accident. There was also a flashlight on the truck, which produced red and white lights. The truck also had reflectors located on the mud flaps behind the rear wheels of the trailer. They were three inches in diameter and were located about two and one-half feet from the ground. The evidence does not disclose how far the reflector lights were located from the outside edges of the trailer. The truck was also equipped with brake lights and clearance lights. The evidence does not disclose the number or exact location of the clearance lights on the rear of the truck. The clearance lights were on the same circuit as the headlights. The brake lights were on a different circuit. The evidence does not show either the presence or absence of tail lights. Probably they were a part of the brake light assembly. The road was straight at the point of the accident, but was slightly upgrade to the east. At the point of the accident the road was 22 feet wide; the center was marked with a painted white line; the left side of the truck was seven feet from the center line; and about four feet of the truck was located on the paved portion and four feet on the shoulder of the highway. it was as far over on the shoulder as it was safe to drive the truck. The Dietrich car was about six feet wide and it could have remained on its side of the highway, viz., the right lane of the highway, and cleared the truck with about one foot to spare. It did veer to the left as it approached the truck, but not enough to avoid the collision.

The accident occurred about 8:00 p. m., October 25, 1957. The sky was overcast, the pavement was dry, vision was not obstructed.

After Potter left Bayfield and had reached a point about 12 miles from Pagosa Springs, his headlights flickered. The amp meter showed a discharge when the lights flickered, but showed a charge at all other times. The shoulder of the road was sufficiently wide at the point where the lights first flickered for Potter to pull off of the pavement. He did so and checked his lights, including

6. Chicago, Rock Island & P. R. Co. v. Consumers Coop. Ass'n, 10 Cir., 180 F.2d 900, 904; Long v. Clinton Aviation Co., 10 Cir., 180 F.2d 665.

his clearance lights. He was unable to find anything wrong with the lights. He turned the switch on and off several times and the lights "worked fine."

Potter then proceeded toward Pagosa Springs. The lights flickered again about a mile from where they first flickered. They then stopped flickering altogether, "seemed to be all right," and continued to function properly for seven miles and until Potter reached a point a short distance west of the point of the accident, when the lights flickered again and then went completely out. Potter proceeded after the lights first flickered, only after he had checked the lights and after they seemed to be functioning normally and under the belief they would continue so to do. It was later learned that the lights went out because of a defective switch. Potter had no switch difficulty on the trip, prior to the time the lights began to flicker.

At the point where the lights went out, there was a gradual upgrade and curve. Potter turned on his front left turn signal light. He believed it would be less hazardous to traffic if he moved the truck to the top of the hill and where there might be a wider shoulder. By stopping and flagging traffic with his flashlight, Potter was able to and did move the truck forward three or four times, in an effort to get to the top of the hill, where the hazard to traffic would be less, and to a point where he hoped the shoulder would be wide enough for him to park off the pavement. He was unable to find a wide shoulder and after moving forward about 100 yards beyond the brow of the hill, he parked at the point of the accident, with the tractor facing to the east. Immediately on parking the truck, he rushed around to the right side of the truck to get his flares. As he started to release the strap holding the flares, he saw the lights of the Dietrich car approaching from the west and the lights of another automobile, driven by one Henry, approaching from the east, the latter being closer to the point of the accident. Believing he would not have time to set out the flares

and warn the approaching vehicles, he flagged the closer car, being the Henry car, first, and when it dimmed its lights in answer to his warning signal, he rushed to the west of the truck and undertook to warn the approaching Dietrich automobile with his flashlight. He walked approximately 20 feet back of the truck, continuing to signal and warn with his flashlight. There was obviously enough time for Dietrich to have stopped, if he had observed the warning. Dietrich dimmed his headlights, but apparently did not see the warning flashlight and continued to approach the truck. Potter continued to wave his flashlight, undertaking to warn Dietrich, until the Dietrich automobile was almost upon him, and then he jumped off the road to avoid being hit by it. About one minute elapsed from the time Potter rushed around to the side of his truck to get his flares and the time the accident occurred.

At the time of the accident, the reflector lights on the mudguards were dirty and were not functioning with full, normal effectiveness. In explaining the dirt on the reflectors, after he had cleaned them at Bayfield, Potter testified, "I hit a streak of road that had rained just ahead of me, approximately * * * 15 miles, and it was fresh rain. It had just rained ahead of me, and *they* was silt and the pavement was wet, and that's where I picked it up." From that statement the jury might have inferred that Potter passed beyond the rain area before reaching the point of the accident, but the distance between the end of the rain area and the point of the accident is not reflected by the record.

A small campsite was located about one mile west of the point of the accident, where Potter could have driven and parked the truck off of the highway. But Potter did not know of nor see such campsite. He did notice a road turnoff into which he might have driven, but thought that the lights would continue to function normally and therefore proceeded to the point where the lights went out.

Certain Colorado statutes are material. The section number references hereinafter appearing are to Colorado Revised Statutes 1953.

Section 13–4–86 makes it a misdemeanor for any person to drive or for the owner to cause or knowingly permit to be driven on any highway any vehicle which is in such an unsafe condition as to endanger any person.

Section 13–4–89, 1957 Cumulative Supplement, provides that every motor vehicle, trailer, or semi-trailer being drawn at the end of a train of vehicles shall be equipped with at least one tail light mounted on the rear at a height of not more than 72 inches and not less than 20 inches.

Section 13–4–90 provides that every vehicle designed or used for the transportation of property and having a width at any part in excess of 80 inches shall be equipped with two clearance lights in the rear, one on each side, displaying a red light visible only to the rear and for a distance of 500 feet to the rear of the vehicle and that every such vehicle shall be equipped with two clearance reflectors, one at each side of the rear, located not more than one inch from the extreme outside edges of the vehicle and not more than 60 inches nor less than 24 inches above the level on which the vehicle stands.

Section 13–4–93, 1957 Cumulative Supplement, provides that whenever a vehicle is parked on a roadway or shoulder adjacent thereto between one-half hour after sunset and one-half hour before sunrise, it shall be equipped with and display one red light visible a distance of 500 feet to the rear of the vehicle.

Section 13–4–112 provides that no motor vehicle carrying a truck license shall be operated on the highways of Colorado without carrying in an accessible place on the outside of the vehicle the following emergency equipment:

(1) Three flares or torches;

(2) Three red flags with suitable standards;

(3) Three red emergency flares, fusee type, capable of burning at least 20 minutes each.

Section 13–4–112 further provides that in a case of a breakdown or stop, other than a stop required by law, upon the paved or traveled portion of the highway between sundown and sunrise, the driver shall immediately display a lighted fusee-type flare at the side of the vehicle nearest the traffic and then proceed forthwith to place a torch or flare as follows: "One torch or flare not less than two hundred feet directly in rear of said motor vehicle; one torch or flare not less than two hundred feet directly in front of said motor vehicle; and one at the side of such vehicle nearest traffic."

Subsection (1) of § 13–4–72 provides that no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the "paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway" and that in every event a clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available at a distance of 200 feet in each direction upon the highway.

Subsection (2) of § 13–4–72 provides that "this section" shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such a manner or to such an extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

The court, in the first trial, fully instructed the jury on subsection (1), but wholly failed, although requested so to do by Pine, to instruct on the provisions of subsection (2) with respect to disabled vehicles.

Negligence is the failure to exercise that degree of care which an or-

dinarily prudent person would exercise under like facts and circumstances.[7]

## I.

### The Reflector Lights

■ The reflector lights were located not more than 60 inches and not less than 24 inches above the ground level of the trailer. In those respects they complied with § 13–4–89, supra. Whether or not they were located not more than one inch from the outside of the trailer does not appear from the evidence. If they were mounted on the outer edges of the mud flaps, they might well have been within the one inch limit required by the statute.

Whether, after passing beyond the rain area and before reaching the point of the accident, Potter had an opportunity to park off of the paved portion of the highway and again clean his reflectors and whether in failing so to do, he was guilty of negligence, at most presented a question of fact for the determination of the jury.

## II.

### The Clearance Lights

■ Whether or not the number and location of the clearance lights on the rear of the trailer complied with the Colorado statute does not appear. However, since the clearance lights went out with the headlights, even if their number and location did not comply with the statute, such noncompliance could not have been the proximate cause of the collision.

## III.

### Emergency Equipment

■ The fact that the tractor and trailer were not equipped with all of the emergency equipment required by the Colorado statute was not the proximate cause of the collision, if Potter had insufficient time to put out warning flares.

## IV.

### Flares

■ Statutes requiring the operator of a vehicle which breaks down or stops on the paved portion of a highway to forthwith, or immediately, place or display torches or flares to warn oncoming traffic on the highway should be and generally are construed as giving the driver a reasonable time within which to comply with the statutory requirements.[8]

■ It was only a short time, not more than a minute or two, after Potter parked his truck off the highway at the point of the accident and as he rushed around the truck to get his flares that he observed the oncoming Henry and Dietrich automobiles. We doubt that he had a reasonable or sufficient time to put out any flares, or that he was guilty of negligence in undertaking to warn Henry and Dietrich with his flashlight, rather than by putting out flares, but at most, whether he had time to put out the flares to warn Dietrich and whether in failing to put out flares and undertaking to warn Dietrich with the

7. Missouri-Kansas-Texas-Railroad Company v. Wardlow, 10 Cir., 262 F.2d 681, 683; Ditter v. Yellow Cab Co., 7 Cir., 221 F.2d 894, 898; Denney v. United States, 10 Cir., 185 F.2d 108, 111; Corrigan v. San Marcos Hotel Co., 9 Cir., 182 F.2d 719, 720; Meyers v. Pittsburgh S.S. Co., 6 Cir., 165 F.2d 642, 644; Whicher v. Phinney, 1 Cir., 124 F.2d 929, 931; Matt Skorey Packard Co. v. Canino, 142 Colo. 411, 350 P.2d 1069, 1071; Parker v. City and County of Denver, 128 Colo. 355, 262 P.2d 553, 554, 37 A.L.R.2d 1177; Seward v. York, 124 Colo. 512, 239 P.2d 301, 305; Hogue v. Colorado & S. Ry. Co., 110 Colo. 552, 136 P.2d 276, 277; 65 C.J.S. Negligence § 1, p. 306.

8. Caperton v. Mast, 85 Cal.App.2d 157, 192 P.2d 467, 470; Piland v. Maryland Cas. Co., D.C.La., 85 F.Supp. 31, 33, aff'd. 5 Cir., 179 F.2d 678; Nesbit v. Everette, 5 Cir., 243 F.2d 59, 62; Anderson v. Steinle, 289 Ill.App. 167, 6 N.E. 2d 879, 881; Gerlot v. Swartz, 212 Ind. 292, 7 N.E.2d 960, 965; Bourgeois v. Longman, La.App., 199 So. 142, 145; Finger v. M. Romano & Son, La.App., 4 So.2d 588, 590; Ledoux v. Beyt, La.App., 35 So.2d 472, 475; Albert v. Krause, 56 Wash.2d 774, 355 P.2d 327.

flashlight, Potter was guilty of negligence, in our opinion, was a question of fact for the jury.

## V.

### The Defect in the Head and Clearance Lights Circuit

Colorado does not, either by statute or regulation, require, as do some states, that headlights and clearance lights operate on separate circuits and when delivered from the manufacturers of trucks, the headlights and clearance lights are usually on a single circuit.

It should be kept in mind that for a considerable time and distance prior to the time when the lights flickered and went out completely, they had not flickered and appeared to be working normally and properly. The question then is, whether when the lights had thus flickered several times, but on examination and check disclosed no defect and appeared again to be functioning normally, Potter, by proceeding on the highway after they had ceased to flicker, exercised that degree of care which a person of ordinary prudence would have exercised under like facts and circumstances.

We are of the opinion that under the evidence viewed in a light most favorable to Pine, reasonable men in the exercise of fair and impartial judgments might reach different conclusions as to whether Potter was negligent in proceeding on the highway after the lights had begun to flicker and that the issue presented was one of fact for the jury.

## VI.

### Disabled Vehicle

Where, as in the instant case, the lights on a vehicle fail at a point on the highway where the shoulder of the road is not wide enough to permit the parking of the vehicle off of the pavement and under circumstances rendering it dangerous to move the vehicle, the vehicle is disabled within the meaning of subsection (2) of § 13–4–72, supra.[9]

But if the vehicle here involved, under the facts and circumstances present, was not a disabled vehicle as a matter of law, within the meaning of such subsection, then, at least, whether it was a disabled vehicle within the meaning of such subsection, under the existing facts and circumstances, presented an issue of fact for the jury.[10]

We are of the opinion that under the evidence considered in a light most favorable to Pine, the issues of whether it or Potter was guilty of negligence which was the proximate cause of the collision and injuries to the Andersons presented issues of fact for the jury and that the court properly refused to instruct the jury at the first trial that Pine was guilty of negligence as a matter of law and was liable for the damages suffered by the Andersons as a result of the collision.

We further conclude that the court properly granted Pine a new trial for its failure to instruct as requested on the issue of a disabled vehicle.

Affirmed.

9. Beach v. Union Brewing Corporation, La.App., 187 So. 332, 335; MacDonald v. Appleyard, 94 N.H. 362, 53 A.2d 434, 436; Woodcock v. Home Mutual Casualty Co., 253 Wis. 178, 33 N.W.2d 202, 205, modifying the earlier Wisconsin cases of Weir v. Caffery, 247 Wis. 70, 18 N.W. 2d 327, 329 and Kline v. Johannesen, 249 Wis. 316, 24 N.W.2d 595, 597; Kedrowski v. Czech, 244 Minn. 111, 69 N.W. 2d 337.

10. Woods v. Walker, 51 Cal.App.2d 307, 124 P.2d 844, 845; Scoville v. Keglor, 27 Cal.App.2d 17, 80 P.2d 162, 169; Merback v. Blanchard, 56 Wyo. 152, 105 P.2d 272, 275; Id., 56 Wyo. 286, 109 P.2d 49; Martin v. Oregon Stages, Inc., 129 Or. 435, 277 P. 291, 294; Cowperthwait v. Tadsen, 212 Minn. 49, 2 N.W.2d 429; Sheridan v. Werkheiser, 88 Ohio App. 474, 100 N.E.2d 301, 303.